**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **RODNEY AKERS, II,** | ) | |
| **KARLA BREWER,** | ) | **JURY DEMANDED** |
| **JAMES SHOTWELL,** | ) | |
| **LAVERN SMITH,** | ) | |
| **JAMES STINSON,** | ) | |
| **ALLEN VANTASSELL,** | ) | **Case No.:** |
|     **Plaintiffs,** | ) | |
| | ) | |
|     **v.** | ) | |
| | ) | |
| **GLIDE LOGISTICS, INC.,** | ) | |
| **ALINA NASTAS a/k/a ALINA SALARI, and** | ) | |
| **IVAN SALARI a/k/a NICHOLAS SALARI,** | ) | |
|     **Defendants.** | ) | |

## COMPLAINT

NOW COME the Plaintiffs RODNEY AKERS ("Plaintiff AKERS"), II, KARLA BREWER ("Plaintiff BREWER"), JAMES SHOTWELL ("Plaintiff SHOTWELL"), LAVERN SMITH ("Plaintiff SMITH"), JAMES STINSON ("Plaintiff STINSON") and ALLEN VANTASSEL ("Plaintiff VANTASSEL") (collectively, "Plaintiffs"), by and through their attorneys, Kreitman Law, LLC, complaining of the Defendants, GLIDE LOGISTICS, INC. ("Defendant GLIDE"), ALINA NASTAS a/k/a ALINA SALARI ("Defendant Alina") and IVAN SALARI a/k/a NICHOLAS SALARI ("Defendant Nick") (collectively, "Defendants").

### I.    INTRODUCTION

1.    Plaintiffs in this case are the former truck drivers of Defendant GLIDE who were victims of a continuous pattern of wire-fraud crime (18 U.S.C. § 1343) committed in furtherance of a RICO Enterprise involved Defendant Nick and Defendant Alina (the "RICO Enterprise"). For years, Defendant Nick and Defendant Alina would knowingly and falsely represent via emailed pay statements to Plaintiffs, and other truck drivers for Defendant GLIDE, that thousands of dollars

1

were being deducted from their earned wages for purposes of an "escrow" fund. Defendant Nick and Alina never intended to and never deposited the Plaintiffs' wages into any kind of "escrow" fund and used the funds in furtherance of their RICO Enterprise for the purpose of expanding a variety of entities controlled by Defendant Nick and Defendant Alina. These businesses related to interstate trucking, such as Defendant GLIDE, Defendant Glide Express, LLC, Prime Truck Center Corporation or Falcon Permits, Inc.

2.     Counts I and II of this action are brought by all Plaintiffs against Defendant Alina and Defendant Nick pursuant to the Civil Racketeer Influenced and Corrupt Organization Act ("Civil RICO" predicate crimes – wire fraud 18 U.S.C. § 1343), 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) respectively. Counts III-VII of this action are brought by all Plaintiffs and all Defendants, for violation of the Truth in Leasing Act ("TILA"), 49 U.S.C. § 14704, *et seq.*, for violations of the Illinois Wage Payment and Collection, Act, 820 ILCS 115, *et seq.* ("IWPCA"), and for the Illinois common law torts of breach of fiduciary duty, fraud and conversion, respectively. Count VIII of this action is brought by Plaintiff STINSON against all Defendants pursuant to the Surface Transportation Assistance Act ("STAA"), 49 U.S.C. § 31105, *et seq.*

## II.     PARTIES

### A.  Defendants

3.     Defendant GLIDE LOGISTICS, INC. ("Defendant GLIDE"), was and is an Illinois corporation.

4.     At all times material to this Complaint until March 25, 2024, Defendant GLIDE was a federally authorized interstate motor carrier, USDOT #3127058, MC-91079, with a principal place of business registered with the Federal Motor Carrier Safety Administration at 17758 S

ROBERT EMMETT DR., HOMER GLEN, IL 60491. Defendant GLIDE's motor carrier authority was revoked on March 25, 2024, by the United States Department of Transportation.

5.      Defendant GLIDE employed truck drivers, which included Plaintiffs, to transport its customers' freight in interstate commerce under its own federal motor carrier authority.

6.      At all times relevant to this Complaint, Defendant ALINA was a resident of this judicial district identified herself as the Registered Agent, President and Secretary of Defendant Glide.

7.      At all times relevant to this Complaint, Defendant NICK was a resident of this judicial district and represented himself as an owner of Defendant GLIDE.

**B.  Plaintiffs**

**1.  Plaintiff AKERS**

8.      Plaintiff AKERS, an Iowa Resident is an interstate truck driver with a CDL Class A license and worked for Defendants from approximately December 2022 – July 1, 2023.

9.      During Plaintiff AKERS's employment with Defendant GLIDE, he signed a "lease" agreement for the assigned equipment by Defendant GLIDE and was misclassified as an "independent contractor" with Defendant GLIDE.  He drove exclusively under Defendant GLIDE's USDOT motor carrier authority and was under Defendants' direction and control at all times during his employment with Defendant GLIDE.

10.     A copy of Plaintiff AKERS's "Equipment Lease Agreement" with Defendant GLIDE, redacted for Plaintiff AKERS's PII, is attached as **Exhibit B**.

**2.  Plaintiff BREWER**

11.     Plaintiff BREWER, a Texas resident, is an interstate truck driver with a CDL Class A license and worked intermittently for Defendants from approximately between May 2021 – April 21, 2023.

12.     During Plaintiff BREWER's employment with Defendant GLIDE, she signed multiple versions of a "lease agreement" for the assigned equipment by Defendant GLIDE and was misclassified as an "independent contractor" with Defendant GLIDE.  She drove exclusively under Defendant GLIDE's USDOT motor carrier authority and was under Defendants' direction and control during her employment with Defendant GLIDE.  Plaintiff BREWER does not have access to a copy of all signed "lease" or independent contractor agreements with Defendant GLIDE.

13.     A copy of Plaintiff BREWER's "Long Term Lease Agreement" with Defendant GLIDE, redacted for Plaintiff BREWER's PII is attached as **Exhibit C**.

3.  **Plaintiff SHOTWELL**

14.     Plaintiff SHOTWELL, a Texas resident, is an interstate truck driver with a CDL Class A license and worked for Defendants from approximately from December 2022 – July 30, 2023.

15.     During Plaintiff SHOTWELL's employment with Defendant GLIDE, he signed a "lease" agreement for the assigned equipment by Defendant GLIDE and was misclassified as an "independent contractor" with Defendant GLIDE.  He drove exclusively under Defendant GLIDE's USDOT motor carrier authority and was under Defendants' direction and control during his employment with Defendant GLIDE.  Plaintiff SHOTWELL does not have access to a copy of said signed "lease" or independent contractor agreement with Defendant GLIDE, but upon

information and belief, Plaintiff SHOTWELL's lease was substantially similar to those of the other Plaintiffs.

**4. <u>Plaintiff SMITH</u>**

16.     Plaintiff SMITH, an Arkansas resident and a veteran of the United States military, is an interstate truck driver with a CDL Class A license and worked for Defendants from approximately from approximately June 2021 - July 2021 and June 2022 – June 30, 2023.

17.     During Plaintiff SMITH's employment with Defendant GLIDE, he signed a "lease" agreement for the assigned equipment by Defendant GLIDE and was misclassified as an "independent contractor" with Defendant GLIDE.  He drove exclusively under Defendant GLIDE's USDOT motor carrier authority and was under Defendants' direction and control during his employment with Defendant GLIDE. Plaintiff SMITH does not have access to a copy of said signed "lease" or independent contractor agreement with Defendant GLIDE.  but upon information and belief, Plaintiff Smith's lease was substantially similar to those of the other Plaintiffs.

**5. <u>Plaintiff STINSON</u>**

18.     Plaintiff STINSON, a Texas resident, is an interstate truck driver with a CDL Class A license and worked for Defendants from approximately from Spring 2021 – August 28, 2022.

19.     During Plaintiff STINSON's employment with Defendant GLIDE, he signed a "lease" agreement for the assigned equipment by Defendant GLIDE and a "contractor" agreement with Defendant GLIDE was misclassified as an "independent contractor" with Defendant GLIDE. He drove exclusively under Defendant GLIDE's USDOT motor carrier authority and was under Defendants' direction and control during his employment with Defendant GLIDE.

20.     Plaintiff STINSON's lease was provided by Defendant GLIDE is attached as **Exhibit D**, with Plaintiff STINSON's PII redacted. This was received by Plaintiff Stinson when he began employment with Defendant GLIDE and was unsigned.

21.     Plaintiff STINSON was subsequently informed by Defendant GLIDE that his pay was reduced to 27%.

22.      Defendants produced a lease agreement reflecting 27% in its initial disclosures in Plaintiff STINSON's underlying STAA matter in 2023, with Plaintiff STINSON's signature apparently forged, attached as **Exhibit E,** with Plaintiff STINSON's PII redacted.

23.     Defendants produced a contractor agreement in its initial disclosures in Plaintiff STINSON's underlying STAA matter in 2023, with Plaintiff STINSON's signature apparently forged, attached as **Exhibit F**, with Plaintiff STINSON's PII redacted.

### 6.  **Plaintiff VANTASSELL**

24.     Plaintiff ALLEN VANTASSELL, a Texas resident, is an interstate truck driver with a CDL Class A license and worked for Defendants from approximately from May 2022 – January 1, 2023.

25.     During PLAINTIFF VANTASSELL's employment with Defendant GLIDE, he signed a "lease" agreement for the assigned equipment by Defendant GLIDE and was misclassified as an "independent contractor" with Defendant GLIDE.  He drove exclusively under Defendant GLIDE's USDOT motor carrier authority and was under Defendants' direction and control during his employment with Defendant GLIDE.  Plaintiff VANTASSELL does not have access to a copy of said signed "lease" or independent contractor agreement with Defendant GLIDE.

### III.    JURISDICTION AND VENUE

26.    This Court has federal question jurisdiction against Defendant Nick and Defendant Alina pursuant to 28 U.S.C. § 1331, arising under the Civil Racketeer Influenced and Corrupt Organization Act ("Civil RICO"), 18 U.S.C. § 1961, *et seq.* (predicate crimes – 18 U.S.C. § 1343, wire fraud) and for Defendants' violation of the Truth in Leasing Act ("TILA"), 49 U.S.C. § 14704, *et seq.*

27.    This court also has federal question jurisdiction for Plaintiff STINSON's claims against all Defendants pursuant to 28 U.S.C. § 1331 arising from the Surface Transportation Assistance Act, 49 U.S.C. §31105, *et seq.,* brought under the kick out provision found under 49 U.S.C. § 31105(c),   On January 20, 2022, Plaintiff Stinson timely filed his predicate STAA complaint with the Occupational Health and Safety Administration, Glide Logistics, Inc. et al/Stinson/5-1260-22-084 ("OSHA Complaint"), alleging that the Defendants retaliated against him and discharged him in violation of the Surface Transportation Assistance Act, 49 U.S.C. §31105, *et seq.*  Because the Secretary of Labor has not issued a final decision within 210 days after the filing of Plaintiff STINSON's STAA Complaint, this Court has original jurisdiction to hear this *de novo* Surface Transportation Assistance Act action pursuant to 49 U.S.C. § 31105(c).

28.    This Court has supplemental jurisdiction over Plaintiffs' state law claims as to all Defendants pursuant to 28 U.S.C. § 1367.

29.    Venue is properly placed in this District because the Defendants are transacting business in this District and because a substantial part of the events or omissions giving rise to the claim occurred in this District pursuant to 28 U.S.C. §1391(b)(2) and (3).

### IV.     GENERAL ALLEGATIONS

**A.  Allegations Related to Control Exercised by Defendants During Plaintiffs' Employment**

30.     Defendants generally agreed to pay each Plaintiff 27% of the gross price booked by Defendants to be transported by each Plaintiff under Defendant GLIDE's USDOT motor carrier authority, less the cost of permits.

31.     Defendants would occasionally orally modify the pay rates in the Plaintiffs contracts.

32.     The "Long Term Lease Agreement" form, signed by at least Plaintiff BREWER, set forth that the driver would earn wages calculated as "27% out of gross after permit cost surcharge and dispatch fees", referring to the "gross" price charged by Defendant GLIDE to its customers for each load transported by the driver. **Cmplt. Ex. C (Plaintiff BREWER lease);**

33.     The "Long Term Lease Agreement" form, signed by at least Plaintiff BREWER (**Cmplt. Ex. C**), and presented to Plaintiff STINSON (**Cmplt. Ex. D**) did not authorize any deductions, and specifically made no mention of deductions for "escrow".

34.     The "Equipment Lease Agreement", signed by at least Plaintiff AKERS, in §8, §8.1-§8.5 and the incorporated Exhibit B to the "Equipment Lease Agreement" referred to an "Escrow Fund" but did not authorize any specific deductions from the wages earned by drivers. **Cmplt. Ex. B**.

35.     Plaintiff AKERS's "Equipment Lease Agreement" refers to a "maintenance escrow fund" of $10,000.00 but did not authorize any specific deductions to be made against the wages earned by the driver. **Cmplt. Ex. B**.

36.     Plaintiff AKERS's "Equipment Lease Agreement" §8.3 obligated Defendant GLIDE to provide to the driver a monthly accounting report of the "maintenance escrow fund". **Cmplt. Ex. B**.

37.     Plaintiff AKERS's "Equipment Lease Agreement" §8.4 obligated Defendant GLIDE to provide to the driver, "interest on the Escrow Fund on at least a quarterly basis. The amount of interest will be established on the date the interest period begins and be equal to the average yield of 91-day, 13-week U.S. Treasury bills, as established in the weekly auction by the Department of the Treasury." **Cmplt. Ex. B**.

38.     Plaintiff AKERS's "Equipment Lease Agreement" §8.5 obligated Defendant GLIDE to return the "maintenance escrow fund" no later than 45 days after termination of the lease to the driver. **Cmplt. Ex. B**.

39.     Neither the "Equipment Lease Agreement" form nor the "Long Term Lease Agreement" form authorized the following deductions to be made from the wages earned by drivers, including Plaintiffs for work performed for Defendant GLIDE, but which in fact were regularly deducted from Plaintiffs' wages by Defendants:

> a. 3% credit card processing fees incurred by Defendants due Defendants' purchase of permits via credit card;
> b. Surcharges to cash advances regularly provided by Defendants;
> c. Specific amounts for repairs, towing and cleaning fees; and/or
> d. Escrow fees.

40.     Plaintiffs and other drivers were prohibited in fact by Defendants from using the semitrucks to drive for any other motor carriers and at least Plaintiff AKERS was restricted by the terms of the "Equipment Lease Agreement" § 20. **Cmplt. Ex. B**.

41.     When each Plaintiff began working for Defendants, they traveled to Illinois to pick up their trucks and attend an orientation training about Defendants' company procedures.

42. Plaintiffs regularly used Illinois roads to make pickups and drop offs in Illinois, and used the Defendants' preferred repair center in Illinois, Prime Truck Center Corporation.

43. Defendants controlled the dispatch of each Plaintiff to customers of Defendant GLIDE during the course of their employment with Defendant GLIDE, through a rotating series of remote dispatchers believed to be based in the Nation of Serbia, who would either text or electronically message load information for assignments to Plaintiffs as opposed to sending original rate confirmations to Plaintiffs.

44. Defendants exclusively controlled the repairs made to the equipment provided to each Plaintiff during the course of their employment with Defendant GLIDE, typically preferring major repairs on equipment be performed at the affiliated Prime Truck Center Corporation.

45. Defendants exclusively controlled the vendors for USDOT hours of electronic log device (ELD) providers and liability insurance used by each Plaintiff during the course of their employment with Defendant GLIDE.

46. Defendants exclusively controlled the rates of pay received by each Plaintiff for the work performed by each Plaintiff for Defendant GLIDE during the course of their employment with Defendant GLIDE.

47. Defendants exercised control over the allocation of vacation time and time off for medical appointments to each Plaintiff during the course of their employment with Defendant GLIDE.

48. In the course of Plaintiffs' employment with Defendant GLIDE, the Defendants required Plaintiffs to follow company rules, enforced with disciplinary action and monetary penalties.

49.     Plaintiff STINSON's copy of these company rules each Plaintiff were required to follow by Defendants during their employment with Defendant GLIDE is attached as **Cmplt. Ex. A**.

50.     Plaintiffs had no independent opportunity for profit or loss.

51.     Plaintiffs did not employ a specialized skill aside from maintaining a commercial drivers license, their work was integral to the Defendants' usual course of business and at the usual places of business for Defendants. Plaintiffs were semitruck drivers who operated semitrucks for the Defendant GLIDE, an interstate trucking company.

52.     Defendants regularly refused to provide Plaintiffs with the original brokers' load confirmation sheets. Instead, most frequently, a foreign based dispatcher for Defendants would simply text or electronically message load information and withhold original rate confirmations reflecting the original "gross" price.  Alternatively, Defendants sometimes provided rate confirmations with the rates blanked out or provided "Driver Pay Reports" and/or "INVOICES" on their own letterhead listing what they claimed to be the price of the load. The "Driver Pay Reports" and/or "INVOICES give no indication that the listed load prices are anything other than the actual load prices that the brokers paid Defendants for hauling the loads.

53.     Similarly, Defendants regularly refused to provide Plaintiffs with the original receipts reflecting the costs of permits assessed against their pay. Instead, they provided "Driver Pay Reports" on their own letterhead listing what they claimed to be the price of the permits. The "Driver Pay Reports" give no indication that the listed permit prices are anything other than the actual load prices that the brokers paid Defendants for hauling the loads.

**B.** **Allegations of Control Specifically Exercised by Defendant Nick and Defendant Alina Over Labor Practices Effecting Plaintiffs**

54.     Defendant Alina and/or Defendant Nick procured the forms and/or approved the forms and/or was the signatory on behalf of Defendant GLIDE for the "lease" agreements and "contractor" agreements each Plaintiff was required to sign with Defendant GLIDE as a condition of their employment with Defendant GLIDE.

55.     At all times relevant to this Complaint, Defendant Alina and Defendant Nick owned, managed, and directed Defendant GLIDE, and shared responsibility for the direction, payment, deductions, and policies and procedures, terms and conditions controlling the work of Defendant GLIDE's drivers including Plaintiffs.

56.     Defendants Alina and Nick shared responsibility for emailing each Plaintiff a weekly "Driver Pay Statement" and/or "Invoice" and knowingly approved said emails to Plaintiffs reflecting deductions for a fraudulent "escrow" typically using the email glidelogistics1@gmail.com and/or through an account on the "ITS Dispatch" platform, including the email communications sent by means of wire specifically indicated herein this Complaint.

57.     The email glidelogistics1@gmail.com automatically loads the name "Ivan Salari" as the individual associated with the account.

58.     The email signature of glidelogistics1@gmail.com during Plaintiffs' employment reflected "Alina Nastas Operations Manager Representative".

59.     Defendant Alina and Defendant Nick had access and did in fact divert the wages deducted from Plaintiffs on the false pretext of "escrow" electronically for the benefit of the RICO Enterprise.

60.     At all times material to this Complaint, there existed such unity of interest and ownership between Defendant Nick, Defendant Alina, and Defendant GLIDE that Defendant GLIDE was constructively an alter-ego of Defendant Alina and Defendant Nick as evidenced by:

a.  Defendant Alina identified herself as the Registered Agent, President, and Secretary of Defendant GLIDE to the Illinois Secretary of State;

b.  Defendant Nick represented himself as an owner of Defendant GLIDE to Plaintiffs;

c.  Defendant Nick and Defendant Alina are married with custody of children together, further blurring the line between personal and corporate interests;

d.  Defendant Nick and Defendant Alina shared responsibility for the direction, payment, deductions, and policies and procedures controlling the work of Defendant GLIDE's drivers, including Plaintiffs;

e.  Defendant Nick and Defendant Alina personally procured, approved, or were signatories on the LEASE AGREEMENTS and contractor agreements that Plaintiffs were required to sign as a condition of their employment with Defendant GLIDE;

f.  Defendant Nick and Defendant Alina personally shared responsibility for emailing weekly "Driver Pay Statements" and/or "Invoices" to Plaintiffs, reflecting deductions for the fraudulent "escrow", typically using the email glidelogistics1@gmail.com and/or through an account on the "ITS Dispatch" platform;

g.  The email glidelogistics1@gmail.com automatically loaded the name "Ivan Salari" as the individual associated with the account;

h.  The email signature of glidelogistics1@gmail.com during Plaintiffs' employment reflected "Alina Nastas Operations Manager Representative";

i.  Defendant Nick and Defendant Alina had direct access to and control over the wages deducted from Plaintiffs under the false pretext of "escrow" and did in fact divert these wages electronically for the benefit of the RICO Enterprise;

j.  Defendant Alina has failed to maintain proper corporate formalities on behalf of Defendant GLIDE, as demonstrated by her actions:

   i.  Making repeated payroll deposits to Plaintiffs, specifically to Plaintiff STINSON from the ZELLE electronic funds transfer account associated with the bank account from another incorporated entity owned and controlled by Defendant Nick and Alina named PRIME TRUCK CENTER CORPORATION;

    ii.   Assigning Plaintiffs to transport loads under the motor carrier authority of GLIDE EXPRESS, LLC, another incorporated business of Defendant Nick and Defendant Alina without a written lease signed by Plaintiffs, in violation of TILA and its regulations;

    iii.   The failure to maintain an office or staff in 2023 to receive certified mail, as evidenced by returned mail on August 24, 2023, at her Illinois Secretary of State registered agent address for Defendant GLIDE at 1326 E 159th Street, Lockport, IL 60441;

    iv.   Repeated failure to accept service at 17758 S ROBERT EMMETT DR, HOMER GLEN, IL 60491, an address registered on behalf of Defendant GLIDE with the Illinois Secretary of State;

    v.   Failure to appear on behalf of Defendant GLIDE in 2023 and 2024 for citations against the company in the matters of *Martell Electric, LLC v. Glide Logistics, Inc.*, 2023 SC 004288 and *PILOT TRAVEL CENTERS, LLC, A L v. Glide Logistics, Inc.*, 2023AR000505 in the 12th Judicial Circuit Court, Will County, Illinois;

    vi.   Defendant Alina has acted as a personal guarantor of Defendant GLIDE's debts, as alleged in the matter of *BMO BANK N.A., vs. GLIDE LOGISTICS INC.*, 2024LA000684, further demonstrating the intermingling of personal and corporate finances.

61.    Adherence to the fiction of separate corporate existence would likely produce an unjust or inequitable result, as:

    a.   Defendant Nick and Defendant Alina personally made knowingly false representations to Plaintiffs regarding the escrow deductions, which were central to the alleged violations of law;

    b.   They personally controlled and directed the unlawful practices alleged in this Complaint, including the failure to provide required documentation, the improper deductions from Plaintiffs' compensation, and the failure to return escrow funds;

    c.   They personally benefited from the unlawful practices by using the improperly retained funds to expand their business interests, including those owned and/or controlled by Defendant Nick and Defendant Alina, such as Defendant GLIDE, Glide Express LLC, Prime Truck Center Corporation, Inc. and Falcon Permits, Inc.;

    d.   Defendant GLIDE has had its USDOT operating authority revoked since March 25, 2024, and is defunct as a motor carrier and is being pursued in multiple cases in which it has defaulted in Illinois state court for unpaid debts. This leaves Plaintiffs with no recourse against the corporation for the violations they suffered;

e. The pattern of avoiding corporate responsibilities, including failure to maintain proper communication channels, appear for legal proceedings, and honor financial obligations, suggests that Defendant Nick and Defendant Alina have used the corporate form to shield themselves from liability while personally benefiting from the company's operations;

f. Given Defendant GLIDE's defunct status, allowing Defendant Nick and Defendant Alina to avoid personal liability would effectively grant them impunity for their direct involvement in systematic violations of law, leaving Plaintiffs without a meaningful remedy for the harm they have suffered.

## C. **Wage Deductions and Escrow Allegations**

62. Throughout Plaintiffs' employment, Defendants made various deductions from Plaintiffs' wages, including fraudulent "escrow" deductions, which form the basis of the RICO and wire fraud allegations in this complaint.

63. Defendants regularly deducted significant amounts from Plaintiffs' wages or final compensation without freely provided, written consent of Plaintiffs, disclosure in the Plaintiffs' leases, appropriate itemization and without supporting documentation.

64. Specifically related to the "escrow" deductions, Defendant Nick and Defendant Alina either knowingly caused or otherwise knowingly conspired and approved the sending of materially false representations to Plaintiffs and other drivers of Defendant GLIDE via email that thousands of dollars of their earned wages were being deducted and held by Defendants for purposes of "escrow".

65. Defendant Nick and Defendant Alina knew at the time each email was sent that this representation was false and that the Plaintiffs' earned wages were never going to be held in "escrow".

66. Defendant Nick and Defendant Alina never intended to segregate the Plaintiffs' earned wages into any kind "escrow" account, and never did.

67. Defendant Nick and Defendant Alina never notified Plaintiffs where their earned wages were held in "escrow".

68. Defendant Nick and Defendant Alina never intended to pay Plaintiffs' any amount to Plaintiffs' for interest on their earned wages held in "escrow" and never paid any money to Plaintiffs' for interest.

69. Defendant Nick and Defendant Alina never otherwise intended to treat Plaintiffs' deducted earned wages as held in "escrow" and never did.

70. Rather, Defendant Nick and Defendant Alina either knowingly caused or otherwise knowingly conspired and approved of these materially false representations to be sent to the Plaintiffs to facilitate the conversion of Plaintiffs' earned wages in furtherance of the RICO Enterprise.

71. These false representations sent by wire were intended by Defendant Nick and Defendant Alina to induce Plaintiffs and other drivers to assent to the conversion of their earned wages under the false belief these wages were held in "escrow" and not to object and cease driving for Defendant GLIDE.

72. Plaintiffs each reasonably relied on Defendant Nick and Defendant Alina's false representations that their earned wages were in fact held in escrow and did not immediately object or cease driving for Defendant Glide.

73. Plaintiffs each did not and would not have consented to Defendant Alina and Defendant Nick simply taking their pay had they been informed of the true purposes of the "escrow" deductions.

**D.  Actual Damages of Individual Plaintiffs Discovered to Date**

**D.1 Plaintiff AKERS**

74.    Defendants made known deductions totaling at least $1,750.00 from Plaintiff AKERS's wages earned during his employment with Defendant GLIDE for a fraudulent "escrow" in violation of 18 U.S.C. § 1343, TILA § 376.12, et seq., IWPCA § 9 and Illinois common law.

75.    Defendants Alina and Nick knowingly devised and executed a scheme to defraud Plaintiff AKERS by falsely representing, through interstate wire communications (email), that deductions of $250.00 from his wages were for an 'escrow' account that did not exist and was never intended to exist. These materially false representations were made on January 19, 2023, April 10, 2023, April 20, 2023, May 3, 2023, June 1, 2023, June 8, 2023, and June 15, 2023. Each communication was intended to deceive Plaintiff AKERS into believing his deducted wages were being securely held in escrow, thereby inducing him to continue driving under false pretenses, when in fact Defendants were wrongfully converting these funds for the benefit of their RICO Enterprise.

76.    Electronic deductions from Plaintiff AKERS's earned wages in the amounts as reflected from the "Driver Pay Statements" for the false pretense of an "escrow" were in fact made by Defendant Alina and Defendant Nick against Plaintiff AKERS's wages, at or near the time of said email communications.

77.    Defendants knowingly refused to timely disburse Plaintiff AKERS's wages deducted for a fraudulent "escrow" following his separation on or about July 1, 2023.

78.    Additionally, Defendants made other known unauthorized deductions totaling at least $403.10, in violation of TILA § 376.12, et seq., IWPCA § 9 and Illinois common law. These non-escrow deductions included "Safety Paperwork" deductions totaling $250.00 (occurring on

17

February 9, February 23, February 24, March 10, and March 24, 2023, each in the amount of $50.00) and "Miles" deductions totaling $153.10 (occurring on February 9, 2023 for $109.10 and February 23, 2023 for $44.00). Defendants knowingly refused to timely disburse Plaintiff AKERS's wages deducted for these reasons following his separation on or about July 1, 2023.

### D.2 Plaintiff BREWER

79.     Defendants made known deductions totaling at least $1,250.00 from Plaintiff BREWER's wages earned during her employment with Defendant GLIDE for a fraudulent "escrow" in violation of 18 U.S.C. § 1343, TILA § 376.12, *et seq*., IWPCA § 9 and Illinois common law.

80.     Defendants Alina and Nick knowingly devised and executed a scheme to defraud Plaintiff BREWER by falsely representing, through interstate wire communications (email), that deductions of $250.00 from her wages were for an 'escrow' account that did not exist and was never intended to exist. These materially false representations were made on December 29, 2022, January 12, 2023, January 26, 2023, January 31, 2023, February 9, 2023, March 16, 2023, April 9, 2023, April 13, 2023, April 20, 2023, May 18, 2023, June 8, 2023, June 22, 2023, July 6, 2023, and July 13, 2023. Each communication was intended to deceive Plaintiff BREWER into believing her deducted wages were being securely held in escrow, thereby inducing her to continue driving under false pretenses, when in fact Defendants were wrongfully converting these funds for the benefit of their RICO Enterprise.

81.     Electronic deductions from Plaintiff BREWER's earned wages in the amounts as reflected from the "Driver Pay Statements" for the false pretense of an "escrow" were in fact made

by Defendant Alina and Defendant Nick against Plaintiff BREWER's wages, at or near the time of said email communications.

82.     Defendants knowingly refused to timely disburse Plaintiff BREWER's wages deducted for a fraudulent "escrow" following her separation on or about April 21, 2023.

83.     Additionally, Defendants made other known unauthorized deductions totaling at least $200.00, in violation of TILA § 376.12, et seq., IWPCA § 9 and Illinois common law. This non-escrow deduction was for "Deep Cleaning" on April 21, 2023. Defendants knowingly refused to timely disburse Plaintiff BREWER's wages deducted for this deduction following her separation on or about April 21, 2023.

### D.3 Plaintiff SHOTWELL

84.     Defendants made known deductions totaling at least $3,750.00 from Plaintiff SHOTWELL's wages earned during his employment with Defendant GLIDE for a fraudulent "escrow" in violation of 18 U.S.C. § 1343, TILA § 376.12, et seq., IWPCA § 9 and Illinois common law.

85.     Defendants Alina and Nick knowingly devised and executed a scheme to defraud Plaintiff SHOTWELL by falsely representing, through interstate wire communications (email), that deductions of $250.00 from his wages were for an 'escrow' account that did not exist and was never intended to exist. These materially false representations were made on December 29, 2022, January 12, 2023, January 26, 2023, January 31, 2023, February 9, 2023, March 16, 2023, April 9, 2023, April 13, 2023, April 20, 2023, May 18, 2023, June 8, 2023, June 22, 2023, July 6, 2023, and July 13, 2023. Each communication was intended to deceive Plaintiff SHOTWELL into believing his deducted wages were being securely held in escrow, thereby inducing him to continue

driving under false pretenses, when in fact Defendants were wrongfully converting these funds for the benefit of their RICO Enterprise.

86.     Electronic deductions from Plaintiff SHOTWELL's earned wages in the amounts as reflected from the "Driver Pay Statements" for the false pretense of an "escrow" were in fact made by Defendant Alina and Defendant Nick against Plaintiff SHOTWELL's wages, at or near the time of said email communications.

87.     Following his separation on or about July 30, 2023, Defendants knowingly refused to timely disburse to Plaintiff SHOTWELL the $3,750.00 of his wages deducted for a fraudulent "escrow". As of the filing of this Complaint, Plaintiff SHOTWELL has not received any reimbursement of these deducted wages.

88.     Additionally, Defendants made other known unauthorized deductions totaling at least $1,956.96, in violation of TILA § 376.12, et seq., IWPCA § 9 and Illinois common law. These non-escrow deductions were primarily for "Towing" charges on May 18, 2023 ($256.96), June 8, 2023 ($1,200.00), and June 22, 2023 ($500.00).

89.     Following his separation on or about July 30, 2023, Defendants knowingly refused to timely disburse to Plaintiff SHOTWELL the $1,956.96 deducted for "Towing" charges. As of the filing of this Complaint, Plaintiff SHOTWELL has not received any reimbursement of these deducted wages.

## D.4 Plaintiff SMITH

90.     Defendants made known deductions totaling at least $2,000.00 from Plaintiff SMITH's wages earned during his employment with Defendant GLIDE for a fraudulent "escrow" in violation of 18 U.S.C. § 1343, TILA § 376.12, et seq., IWPCA § 9 and Illinois common law.

91.     Defendants Alina and Nick knowingly devised and executed a scheme to defraud Plaintiff SMITH by falsely representing, through interstate wire communications (email), that deductions of $250.00 from his wages were for an 'escrow' account that did not exist and was never intended to exist. These materially false representations were made on July 7, 2022, July 15, 2022, July 28, 2022, August 4, 2022, August 12, 2022, August 18, 2022, August 25, 2022, and September 15, 2022. Each communication was intended to deceive Plaintiff SMITH into believing his deducted wages were being securely held in escrow, thereby inducing him to continue driving under false pretenses, when in fact Defendants were wrongfully converting these funds for the benefit of their RICO Enterprise.

92.     Electronic deductions from Plaintiff SMITH's earned wages in the amounts as reflected from the "Driver Pay Statements" for the false pretense of an "escrow" were in fact made by Defendant Alina and Defendant Nick against Plaintiff SMITH's wages, at or near the time of said email communications.

93.     Following his separation on or about June 30, 2023, Defendants knowingly refused to timely disburse Plaintiff SMITH's wages deducted for a fraudulent "escrow".

94.     Additionally, Defendants made other known unauthorized deductions totaling at least $1,550.00, in violation of TILA § 376.12, et seq., IWPCA § 9 and Illinois common law. These non-escrow deductions included charges for "Ramp Missing" ($1,250.00) and "Truck deep cleaning (truck has dog hair)" ($300.00), both occurring on August 4, 2023.

95.     Following a demand by Plaintiff SMITH for his escrow back and with knowledge of Plaintiff STINSON's OSHA claim, on or about August 4, 2023, Defendants represented to Plaintiff SMITH by email that a $300.00 deduction for "dog hair" cleaning, and a $1,250.00 deduction for "ramps" were assessed against his escrow. On or about August 8, 2023, Plaintiff

SMITH received repayment of only $950.00 of his wages held in the fraudulent "escrow" by Defendants.

**D.5 Plaintiff STINSON**

96.     Defendants made known deductions totaling at least $800.00 from Plaintiff STINSON's wages earned during his employment with Defendant GLIDE for a fraudulent "escrow" in violation of 18 U.S.C. § 1343, TILA § 376.12, et seq., IWPCA § 9 and Illinois common law.

97.     Defendants Alina and Nick knowingly devised and executed a scheme to defraud Plaintiff STINSON by falsely representing, through interstate wire communications (email), that deductions of $200.00 from his wages were for an 'escrow' account that did not exist and was never intended to exist. These materially false representations were made on July 30, 2021, August 5, 2021, August 12, 2021, and August 20, 2021. Each communication was intended to deceive Plaintiff STINSON into believing his deducted wages were being securely held in escrow, thereby inducing him to continue driving under false pretenses, when in fact Defendants were wrongfully converting these funds for the benefit of their RICO Enterprise.

98.     Electronic deductions from Plaintiff STINSON's earned wages in the amounts as reflected from the "Driver Pay Statements" for the false pretense of an "escrow" were in fact made by Defendant Alina and Defendant Nick against Plaintiff STINSON's wages, at or near the time of said email communications.

99.     Following Plaintiff STINSON's separation on or about August 28, 2021, Defendants willfully refused to repay Plaintiff STINSON the amounts deducted for the fraudulent "escrow".

100.    Prior to Plaintiff STINSON's separation, Plaintiff STINSON earned the following wages for work performed for Defendant GLIDE that was never paid in violation of TILA § 376.12, et seq., IWPCA § 9 and Illinois common law.:

    a.  Estimated Payment of $1,080.00 for load from Pennsylvania to Nebraska prior to constructive discharge, to be paid at 27% of the fee charged by Defendants less permitting costs, estimated to be $4,000.00;

    b.  Estimated Payment of $297.00 for load from New York to Ohio in August 2021, to be paid at 27% of the fee charged by Defendants less permitting costs, estimated to be $1,100.00;

    c.  Estimated Payment of $1,350.00 for load Texas to New York in August 2021, to be paid at 27% of the fee charged by Defendants less permitting costs, estimated to be $5,000.00;

    d.  Payment of $1,000.00 sign on incentive promised to Plaintiff STINSON by Defendants; and

    e.  Payment of $500.00 for referral incentive promised to Plaintiff STINSON by Defendants for the referral of Plaintiff Brewer;

101.    On or about February 10, 2022, concurrent with Defendants' initial attorney's appearance, Defendants' response to Plaintiff STINSON's STAA claim (previously filed and served with Plaintiff's notice of attorney representative) and production by Defendants' of the lease agreements with the forged signatures of Plaintiff STINSON (**Cmplt. Ex. E; Cmplt. Ex. F**) Plaintiff STINSON received an unsolicited electronic funds transfer of $969.56 from Defendant Nick.  Upon notification, Plaintiff's counsel refused this amount as settlement of any claim to Defendant's attorney, who in response claimed it was for amounts Defendants "owed" to Plaintiff STINSON.

**D.6 Plaintiff VANTASSELL**

102.    Defendants made known deductions totaling at least $2,500.00 from Plaintiff VANTASSELL's wages earned during his employment with Defendant GLIDE for a fraudulent

"escrow" in violation of 18 U.S.C. § 1343, TILA § 376.12, et seq., IWPCA § 9 and Illinois common law.

103.    Defendants Alina and Nick knowingly devised and executed a scheme to defraud Plaintiff VANTASSELL by falsely representing, through interstate wire communications (email), that deductions of $250.00 from his wages were for an 'escrow' account that did not exist and was never intended to exist. These materially false representations were made on June 2, 2022, July 14, 2022, August 12, 2022, August 18, 2022, August 25, 2022, September 1, 2022, September 8, 2022, September 23, 2022, September 29, 2022, and October 7, 2022. Each communication was intended to deceive Plaintiff VANTASSELL into believing his deducted wages were being securely held in escrow, when in fact Defendants were wrongfully converting these funds for the benefit of their RICO Enterprise.

104.    Electronic deductions from Plaintiff VANTASSELL's earned wages in the amounts as reflected from the "Driver Pay Statements" for the false pretense of an "escrow" were in fact made by Defendant Alina and Defendant Nick against Plaintiff VANTASSELL's wages, at or near the time of said email communications.

105.    Following his separation on or about January 1, 2023, Defendants knowingly refused to timely disburse Plaintiff VANTASSELL's wages deducted for a fraudulent "escrow". Plaintiff VANTASSELL demanded return of his wages deducted for a fraudulent "escrow" in writing to Defendants. Following retaining attorney representation in Plaintiff STINSON's matter, on or about March 8, 2023, Defendants returned $1,000.00 of Plaintiff VANTASSEL's wages withheld for a fraudulent "escrow". On or about July 3, 2023, Defendants returned an additional $825.00. Defendants have refused to reimburse the remaining $675.00 of Plaintiff VANTASSEL's escrow money as of the filing of this Complaint.

E. **Common Civil RICO Allegations**

106.    At all times relevant to this Complaint, Defendant Alina was a "person" within the meaning of RICO §1961(3), as an individual capable of holding a beneficial interest in property.

107.    At all times relevant to this Complaint, Defendant Nick is a "person" within the meaning of RICO, §1961(3), as an individual capable of holding a beneficial interest in property.

108.    Defendant Nick and Defendant Alina, and potentially other various associates, constituted an association-in-fact RICO enterprise within the meaning of 18 U.S.C. § 1961(4) (the "RICO Enterprise").

109.    The common purpose of Defendant Nick and Defendant Alina in the RICO Enterprise has been the expansion and operation of various entities involved in interstate trucking effecting interstate commerce within the meaning of RICO, §1961(3).  These businesses included those owned and/or controlled by Defendant Nick and Defendant Alina, including Defendant GLIDE, Glide Express LLC, Prime Truck Center Corporation, Inc. and Falcon Permits, Inc.

110.    In furtherance of this common purpose, beginning at least as early as 2021, or approximately when Defendant Nick and Defendant Alina took exclusive control over Defendant GLIDE, the RICO Enterprise began an illegitimate continuous and repeated pattern of racketeering activity including the RICO predicate of crime wire fraud (18 U.S.C. § 1343) against Plaintiffs and other truck drivers employed by Defendant GLIDE common in the trucking industry within the meaning of RICO, §1961(5).

111.    For years, Defendant Nick and Defendant Alina knowingly and falsely represented via email to Defendant GLIDE's drivers, including Plaintiffs, that thousands of dollars of their pay, approximately $2,500.00 per driver, was being deducted to be held in "escrow", on the pretense this was to be treated as the Plaintiffs' money and returned in full at separation.  Defendant Alina

and Defendant Nick never intended to and never deposited these deducted wages into an "escrow" and instead converted this money to reinvest in various businesses effecting interstate commerce within the meaning of RICO, §1961(3) and only returned portions of the "escrow" money when convenient. As alleged herein, this scheme was on-going and continued for years, effecting the Plaintiffs, and likely every other driver party to a lease agreement with Defendant GLIDE.

112.    Specifically, the pattern of the predicate crimes of federal wire fraud, 18 U.S.C. § 1343, are set forth as committed by Defendant Nick and Defendant Alina as to each Plaintiff in the following respective Paragraphs of this Complaint:

   a.  Plaintiff AKERS: Complaint ¶62-73; and ¶74-77;
   b.  Plaintiff BREWER: Complaint ¶62-73; and ¶79-82;
   c.  Plaintiff SHOTWELL: Complaint ¶62-73; and ¶84-87;
   d.  Plaintiff SMITH: Complaint ¶62-73; and ¶90-93;
   e.  Plaintiff STINSON: Complaint ¶62-73; and ¶96-99; and
   f.  Plaintiff VANTASSELL: Complaint ¶62-73; and ¶102-105.

113.    The acts set forth in the above paragraph constitute a pattern of racketeering activity by Defendant Nick and Defendant Alina pursuant to 18 U.S.C. § 1961(5).

## COUNT I
## RICO §1962(c)
### All Plaintiffs vs. Defendants ALINA NASTAS a/k/a ALINA SALARI and IVAN SALARI a/k/a NICHOLAS SALARI

114.    Plaintiffs incorporate and reallege Paragraphs 1-113 of this Complaint herein this Paragraph of this Count I.

115.    18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity […]" RICO, § 1962(c)

116.    As described herein, Defendant Alina violated RICO, § 1962(c) by being associated with the RICO Enterprise and engaging a pattern of racketeering activity, namely a pattern of on-going and continuous wire fraud related to the conversion of earned wages of Plaintiffs and other drivers for Defendant GLIDE, on the false pretext of deductions for "escrow".

117.    As described herein, Defendant Nick violated RICO, § 1962(c) by being associated with the RICO Enterprise and engaging a pattern of racketeering activity, namely a pattern of on-going and continuous wire fraud related to the conversion of earned wages of Plaintiffs and other drivers for Defendant GLIDE, on the false pretext of deductions for "escrow".

118.    As a direct and proximate result of Defendant Alina's and Defendant Nick's racketeering activities and violations of 18 U.S.C. § 1962(c), each Plaintiff has been injured in their business and property in that they were denied access to their earned wages deducted on the fraudulent pretext of an "escrow" while in possession of Defendants Nick and Alina and each Plaintiff has been denied interest payments on their wages deducted for the fraudulent "escrow" in at least the following amounts:

   a.  Plaintiff AKERS sustained damages in the amount of $1,750.00 plus unpaid interest on said amounts;
   b.  Plaintiff BREWER sustained damages in the amount of $1,250.00 plus unpaid interest on said amounts;
   c.  Plaintiff SHOTWELL sustained damages in the amount of $3,750.00 plus unpaid interest on said amounts;
   d.  Plaintiff SMITH sustained damages in the amount of $1,050.00 plus unpaid interest on the "escrow" deductions totaling $2,000.00;
   e.  Plaintiff STINSON sustained damages in the amount of $800.00 plus unpaid interest on said amounts; and
   f.  Plaintiff VANTASSELL sustained damages in the amount of $675.00 plus unpaid interest on "escrow" deductions totaling $2,500.00.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in their favor, and against Defendants ALINA NASTAS a/k/a ALINA SALARI and IVAN SALARI a/k/a NICHOLAS SALARI, jointly and severally, for each Plaintiff as follows:

A. Award of actual damages as follows:
    i. Plaintiff AKERS in the amount of $1,750.00, plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the deduction date;
    ii. Plaintiff BREWER in the amount of $1,250.00, plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the deduction date;
    iii. Plaintiff SHOTWELL in the amount of $3,750.00 plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the respective deduction date;
    iv. Plaintiff SMITH in the amount of $1,050.00 plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the respective deduction date;
    v. Plaintiff STINSON in the amount of $800.00 plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the respective deduction date; and
    vi. Plaintiff VANTASSELL in the amount of $675.00 plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the respective deduction date;

B. Award of treble damages to each Plaintiff calculated upon their respective Actual Damages award;
C. Award of Reasonable Attorney's Fees and Costs; and
D. Whatever other relief the Court deems just and reasonable.

## COUNT II
### Violation of RICO §1962(d)
### All Plaintiffs vs. Defendants ALINA NASTAS a/k/a ALINA SALARI and IVAN SALARI a/k/a NICHOLAS SALARI

119. Plaintiffs incorporate and reallege Paragraphs 1-118 of this Complaint herein this Paragraph of this Count II.

120. 18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

121. At all relevant times, beginning in or around 2021 when Defendant Alina and Defendant Nick obtained exclusive control over Defendant GLIDE, Defendant Alina and Defendant Nick agreed to and did conspire to violate 18 U.S.C. § 1962 (c), as alleged above and incorporated herein, in violation of 18 U.S.C. § 1962(d). The object of this conspiracy has been

to expand the interstate trucking entities under the control of Defendant Nick and Alina through the income derived from a pattern of wire fraud against the Plaintiffs and other drivers of Defendant GLIDE.

122. As a direct and proximate result of Defendant Alina's and Defendant Nick's conspiracy to commit racketeering activities and violations of 18 U.S.C. § 1962(d), each Plaintiff has been injured in their business and property in that they were denied access to their earned wages deducted on the fraudulent pretext of an "escrow" while in possession of Defendants Nick and Alina and each Plaintiff has been denied interest payments on their wages deducted for the fraudulent "escrow" in at least the following amounts:

   a. Plaintiff AKERS sustained damages in the amount of $1,750.00 plus unpaid interest on said amounts;
   b. Plaintiff BREWER sustained damages in the amount of $1,250.00 plus unpaid interest on said amounts;
   c. Plaintiff SHOTWELL sustained damages in the amount of $3,750.00 plus unpaid interest on said amounts;
   d. Plaintiff SMITH sustained damages in the amount of $1,050.00 plus unpaid interest on the "escrow" deductions totaling $2,000.00;
   e. Plaintiff STINSON sustained damages in the amount of $800.00 plus unpaid interest on said amounts; and
   f. Plaintiff VANTASSELL sustained damages in the amount of $675.00 plus unpaid interest on "escrow" deductions totaling $2,500.00.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in their favor, and against Defendants ALINA NASTAS a/k/a ALINA SALARI and IVAN SALARI a/k/a NICHOLAS SALARI, jointly and severally, for each Plaintiff as follows:

   A. Award of actual damages as follows:
       i. Plaintiff AKERS in the amount of $1,750.00, plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the deduction date;
       ii. Plaintiff BREWER in the amount of $1,250.00, plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the deduction date;

29

    iii.   Plaintiff SHOTWELL in the amount of $3,750.00 plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the respective deduction date;

    iv.   Plaintiff SMITH in the amount of $1,050.00 plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the respective deduction date;

    v.   Plaintiff STINSON in the amount of $800.00 plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the respective deduction date; and

    vi.   Plaintiff VANTASSELL in the amount of $675.00 plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the respective deduction date;

B.    Award of treble damages to each Plaintiff calculated upon their respective Actual Damages award;

C.    Award of Reasonable Attorney's Fees and Costs; and

D.    Whatever other relief the Court deems just and reasonable.

## <u>COUNT III</u>
## VIOLATION OF TRUTH-IN-LEASING ACT
## All Plaintiffs vs. All Defendants

123.    Plaintiffs incorporate and reallege Paragraphs 1-113 of this Complaint herein this Paragraph of this Count.

124.    The Truth-in-Leasing-Act ("TILA") and its implementing regulations govern the terms and conditions under which a federally authorized motor carrier can contract with an "owner", meaning a person with a right to exclusive use of a commercial motor vehicle pursuant to title or a lease, for the performance of interstate non-exempt freight transportation services under that motor carrier's federal motor carrier authority. See 49 U.S.C. § 14102(a); 49 C.F.R. § 376, et seq.

125.    Defendant GLIDE, as the authorized carrier within the meaning of the TILA regulations § 376.2(a), held the federal motor carrier operating authority (USDOT #3127058, MC #91079), required to provide services for the transport of non-exempt goods in interstate commerce.

126.    Defendant GLIDE was required to comply with TILA and the TILA regulations in its contracts and/or agreements with truck drivers, including Plaintiffs, who themselves leased equipment while operating under Defendant GLIDE's motor authority. 49 C.F.R. § 376.1(a)-(b); 49 C.F.R. § 376.2(e); 49 C.F.R. § 376.12 (introductory paragraph).

127.    Each Plaintiff entered into a lease agreement with Defendant GLIDE which respectively provided for each Plaintiff's exclusive use of "equipment" (the semitruck provisioned by Defendant GLIDE) within the meaning of TILA regulations § 376.2(b).

128.    By operation of these lease agreements, each Plaintiff each became an "owner" of the "equipment" within the meaning of TILA regulations § 376.2(d)(2).

129.    Additionally, by operation of these same lease agreements with each Plaintiff, Defendant GLIDE then entered into a "lease" with each Plaintiff within the meaning of TILA regulations § 376.2(e) for each Plaintiff's respective "equipment" and for each Plaintiff's driving services using said "equipment" under Defendant GLIDE's federal motor carrier authority, licenses and permits (hereinafter referenced individually "LEASE AGREEMENT" or collectively as "LEASE AGREEMENTS".

130.    By virtue of these LEASE AGREEMENTS, each Plaintiff became a "lessor" within the meaning of TILA regulations § 376.2(f), as they each granted the use of equipment, with or without a driver, to an authorized carrier, such as Defendant GLIDE, for use in the regulated transportation of property, in exchange for compensation.

131.    Plaintiffs entered into LEASE AGREEMENTS with Defendant GLIDE during the following periods: a. Plaintiff AKERS from approximately December 2022 to July 1, 2023; b. Plaintiff BREWER intermittently from approximately May 2021 to April 21, 2023; c. Plaintiff

SHOTWELL from approximately December 2022 to July 30, 2023; d. Plaintiff SMITH from approximately June 2021 to July 2021 and June 2022 to June 30, 2023; e. Plaintiff STINSON from approximately Spring 2021 to August 28, 2022; and f. Plaintiff VANTASSELL from approximately May 2022 to January 1, 2023.

132.    These LEASE AGREEMENTS between each Plaintiff and Defendant GLIDE were subject to and required to comply with TILA regulations. 49 C.F.R. § 376.1(a)-(b); 49 C.F.R. § 376.2(e).

133.    These LEASE AGREEMENTS were required to be in writing and signed by the parties. 49 C.F.R. § 376.11(a)

134.    The TILA regulations mandated each of the LEASE AGREEMENTS to contain certain provisions which Defendant GLIDE was required to comply with, including but not limited to:

    a. The lease shall specify the amount to be paid by the authorized carrier for equipment and driver's services. 49 C.F.R. § 376.12(d).

    b. The lease shall clearly specify all items that may be initially paid for by the authorized carrier but ultimately deducted from the lessor's compensation. 49 C.F.R. § 376.12(h).

    c. When a lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will provide the lessor a copy of the rated freight bill before or at the time of settlement. 49 C.F.R. § 376.12(g).

    d. If escrow funds are required, the lease shall specify:

        i. The amount of any escrow fund or performance bond required and where it is deposited;

        ii. The specific items to which the escrow fund can be applied;

        iii. That the authorized carrier shall provide an accounting to the lessor of any transactions involving such fund;

    iv.  That the lessor has the right to demand an accounting for transactions involving the escrow fund at any time;

    v.  That while the escrow fund is under the control of the carrier, the carrier shall pay interest on the escrow fund on at least a quarterly basis at a rate at least equal to the average yield on 91-day, 13-week Treasury bills;

    vi.  The conditions the lessor must fulfill to have the escrow fund returned, and that in no event shall the escrow fund be returned later than 45 days from the date of termination. 49 C.F.R. § 376.12(k).

e.  The lease shall specify that payment of compensation by the authorized carrier to the lessor shall be made within 15 days after submission of the necessary delivery documents concerning a trip in the service of the authorized carrier. 49 C.F.R. § 376.12(f).

f.  The lease shall specify that payment to the lessor shall be made within 15 days after submission of the necessary delivery documents and that the authorized carrier shall not set time limits for the submission by the lessor of required delivery documents. 49 C.F.R. § 376.12(f).

g.  The lease shall specify that the only documentation required before the lessor can receive payment is limited to log books required by the Department of Transportation and those documents necessary for the authorized carrier to secure payment from the shipper. 49 C.F.R. § 376.12(f).

h.  The lease shall specify that payment to the lessor shall not be made contingent upon submission of a bill of lading to which no exceptions have been taken. 49 C.F.R. § 376.12(f).

135.  Defendant GLIDE violated these TILA requirements with respect to the Plaintiffs

in the following ways:

a.  Defendant GLIDE failed to clearly specify in the LEASE AGREEMENTS all items that would be deducted from Plaintiffs' compensation, including but not limited to the 3% credit card processing fees for permits not disclosed and charged against Plaintiffs' compensation, surcharges on cash advances, specific amounts for repairs, towing and cleaning fees, and escrow fees.

b.  Defendant GLIDE failed to provide Plaintiffs with copies of the rated freight bills or equivalent documentation before or at the time of settlement, despite Plaintiffs' compensation being based on a percentage of the gross revenue for shipments.

c.  Regarding the escrow funds, Defendant GLIDE:

    i.  Failed to specify in the LEASE AGREEMENTS the specific items to which the escrow fund could be applied;

    ii.  Failed to provide regular accountings to Plaintiffs of transactions involving their escrow funds;

   iii.  Failed to pay interest on the escrow amounts deducted from Plaintiffs' wages;

   iv.  Failed to return the escrow funds to Plaintiffs within 45 days of the termination of the lease agreements;

    v.  Failed to provide information about where the escrow funds were deposited.

d.  Defendant GLIDE failed to make timely payments to Plaintiffs as required by TILA:

    i.  Specifically, Plaintiff STINSON was not paid within the 15-day period mandated by TILA regulations;

   ii.  By making unauthorized deductions from Plaintiffs' compensation, Defendant GLIDE effectively failed to pay Plaintiffs in full within the required 15-day period.

e.  Defendant GLIDE failed to properly specify in the LEASE AGREEMENTS the documentation required for payment and the prohibition on withholding payment based on certain document submissions:

    i.  The LEASE AGREEMENTS did not clearly state that the only required documents for payment were log books and documents necessary to secure payment from the shipper;

   ii.  The LEASE AGREEMENTS did not specify that payment could not be made contingent upon submission of a bill of lading to which no exceptions have been taken;

136.  Under 49 U.S.C. §14704(a)(2), Defendant GLIDE is liable to Plaintiffs for the damages they suffered on account of Defendant's TILA regulatory violations, including:

a.  Repayment of all unauthorized deductions;

b.  Return of all escrow funds;

c.  Payment of interest on escrow funds;

d.  Compensation for any discrepancies in payment resulting from the failure to provide rated freight bills or equivalent documentation;

e.  Compensation for late payments, including interest and any consequential damages resulting from the delay in payment;

f. Compensation for partial payments due to unauthorized deductions, including interest on the withheld amounts;

g. Compensation for any payments improperly withheld or delayed due to excessive documentation requirements, including interest and any consequential damages resulting from such withholding or delay.

137. Plaintiffs are entitled to an accounting of:

a. All deductions made from their compensation;

b. All transactions involving their escrow funds;

c. All rate confirmations to determine if they were paid the full percentage of the gross price for each load booked;

d. All payments made to Plaintiffs, including the dates of such payments, to determine compliance with the 15-day payment requirement under TILA;

e. All instances where payment was withheld or delayed, including the reasons for such withholding or delay and the documentation requested or required by Defendant GLIDE for payment.

138. As a direct result of Defendants' violations of TILA specified herein, Plaintiffs have

suffered the following damages:

a. Plaintiff AKERS is owed $1,750.00 in fraudulent escrow deductions, plus unpaid TILA interest on these "escrow" deductions, and $403.10 in other unauthorized deductions;

b. Plaintiff BREWER is owed $1,250.00 in fraudulent escrow deductions, plus unpaid TILA interest on these "escrow" deductions, and $200.00 in unauthorized "Deep Cleaning" deductions;

c. Plaintiff SHOTWELL is owed $3,750.00 in fraudulent escrow deductions, plus unpaid TILA interest on these "escrow" deductions, and $1,956.96 in unauthorized "Towing" charges;

d. Plaintiff SMITH is owed $1,050.00 in unreimbursed fraudulent escrow deductions (after partial repayment), plus unpaid TILA interest on the full $2,000.00 of escrow deductions, and $1,550.00 in unauthorized deductions for "Ramp Missing" and "Truck deep cleaning";

e. Plaintiff STINSON is owed $800.00 in fraudulent escrow deductions, plus unpaid TILA interest on these "escrow" deductions, and $4,227.00 in unpaid wages for completed loads, sign-on incentive, and referral incentive; and

f. Plaintiff VANTASSELL is owed $675.00 in unreimbursed fraudulent escrow deductions (after partial repayment), plus unpaid TILA interest on the full $2,500.00 of escrow deductions.

g. These amounts represent known deductions, unpaid wages, and unpaid interest in violation of TILA § 376.12, *et seq.*, with the possibility of additional, currently unknown amounts upon access to original rate confirmation documents.

139.   Defendant Alina and Defendant Nick are jointly and severally liable for Defendant GLIDE's TILA violations to Plaintiffs on the basis of alter-ego liability and/or other corporate veil piercing theories. Defendant Alina and Defendant Nick exercised complete dominion and control over Defendant GLIDE, using their positions as officers and managers to direct the company's operations, including the fraudulent escrow scheme and other unauthorized deductions. They used Defendant GLIDE as a mere instrumentality to conduct their personal business, disregarding corporate formalities and commingling corporate and personal funds, as evidenced by their direct involvement in the fraudulent escrow scheme and their personal use of the misappropriated funds.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in their favor, and against Defendants GLIDE LOGISTICS, INC., ALINA NASTAS a/k/a ALINA SALARI, and IVAN SALARI a/k/a NICHOLAS SALARI, jointly and severally, for each Plaintiff as follows:

A. Monetary award for fraudulent escrow deductions and unpaid TILA interest on these deductions:
   i. Plaintiff AKERS: $1,750.00, plus unpaid TILA interest on these deductions;
   ii. Plaintiff BREWER: $1,250.00, plus unpaid TILA interest on these deductions;
   iii. Plaintiff SHOTWELL: $3,750.00, plus unpaid TILA interest on these deductions;
   iv. Plaintiff SMITH: $1,050.00 (unreimbursed amount), plus unpaid TILA interest on the full $2,000.00 of escrow deductions; e. Plaintiff STINSON: $800.00, plus unpaid TILA interest on these deductions;
   v. Plaintiff VANTASSELL: $675.00 (unreimbursed amount), plus unpaid TILA interest on the full $2,500.00 of escrow deductions;
B. Monetary award for other unauthorized deductions in violation of TILA:

     i.   Plaintiff AKERS: $403.10 for unauthorized "Safety Paperwork" and "Miles" deductions;

     ii.   Plaintiff BREWER: $200.00 for unauthorized "Deep Cleaning" deductions;

     iii.   Plaintiff SHOTWELL: $1,956.96 for unauthorized "Towing" charges;

     iv.   Plaintiff SMITH: $1,550.00 for unauthorized "Ramp Missing" and "Truck deep cleaning" deductions;

     v.   Plaintiff STINSON: $4,227.00 for unpaid wages for completed loads, sign-on incentive, and referral incentive;

     vi.   Plaintiff VANTASSELL: No additional unauthorized deductions claimed;

C.     Award of prejudgment interest on all amounts at the highest rate allowed by law, beginning on the date each TILA violation occurred;

D.     Award of reasonable attorney's fees and costs as provided for under TILA;

E.     Whatever other relief the Court deems just and reasonable, including any additional damages discovered during the course of this litigation.

**<u>COUNT IV</u>**
**VIOLATION OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT**
**All Plaintiffs vs. All Defendants**

140.    Plaintiffs incorporate and reallege Paragraphs 1-113 of this Complaint herein this Paragraph of this Count.

141.    Defendant GLIDE was an "employer" of each Plaintiff during their respective periods of employment for Defendant GLIDE pursuant to IWPCA, 820 ILCS 115/2.

142.    Each Plaintiff was an "employee" of Defendant GLIDE during their respective periods of employment for Defendant GLIDE pursuant to the IWPCA, 820 ILCS 115/2

143.    Defendant ALINA, as an officer of GLIDE LOGISTICS, INC. who knowingly permitted the IWPCA violations set forth in this Complaint, was an "employer" of each Plaintiff during their respective periods of employment for Defendant GLIDE pursuant to the IWPCA 820 ILCS 115/13.

144.    Defendant Nick, as a manager of GLIDE LOGISTICS, INC. who knowingly permitted the IWPCA violations set forth in this Complaint, was an "employer" of each Plaintiff

during their respective periods of employment for Defendant GLIDE pursuant to the IWPCA 820 ILCS 115/13.

145.    Defendant Alina and Defendant Nick are jointly and severally liable for Defendant GLIDE's IWPCA violations to Plaintiffs on the basis of alter-ego liability pursuant to IWPCA 820 ILCS 115/2.

146.    At all times relevant to this Complaint, Section 9 of the IWPCA commanded in relevant part:

> [D]eductions by employers from wages or final compensation are prohibited unless such deductions are (1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; (4) made with the express written consent of the employee, given freely at the time the deduction is made;
> IWPCA, 820 ILCS 115/9.

147.    At all times relevant to this Complaint, Section 5 of the IWPCA commanded in relevant part:

> Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee. Where such employee requests in writing that his final compensation be paid by check and mailed to him, the employer shall comply with this request.
> IWPCA, 820 ILCS 115/5.

148.    Defendants employed each Plaintiff to provide services as a truck driver pursuant to an "agreement" for "wages" within the meaning of IWPCA Section 2, 820 ILCS 115/2. Defendants generally agreed to pay each Plaintiff wages of 27% of the gross price booked by Defendants to be transported by each Plaintiff under Defendant GLIDE's USDOT motor carrier authority, less the cost of permits.

149.    Defendants made various deductions against the earned wages of Plaintiffs without their freely given written consent and for the benefit of Defendants in violation of IWPCA Section 9.

150. These included deductions such as for a 3% fee charged on the amounts of all permits secured for each Plaintiff, chargeback deductions for processing fees charged on "cash advances" to Plaintiffs, chargeback deductions for a fraudulent "escrow" made against Plaintiffs' wages, and various chargeback deductions for repairs, towing charges and cleanings against Plaintiffs' wages in violation of TILA.

151. These aforesaid deductions were not required by law, were not made for the benefit of the Plaintiffs, were not made in response to a valid wage assignment or wage deduction order and were not made with the express written consent of the Plaintiffs, given freely at the time the deduction is made.

152. As a direct result of Defendants' violations of IWPCA Section 5, which requires timely payment of final compensation to separated employees, Plaintiffs have suffered the following damages:

   a. Plaintiff AKERS is owed $1,750.00 in fraudulent escrow deductions and $403.10 in other unauthorized deductions, which Defendants failed to pay upon his separation on July 1, 2023;
   b. Plaintiff BREWER is owed $1,250.00 in fraudulent escrow deductions and $200.00 in unauthorized "Deep Cleaning" deductions, which Defendants failed to pay upon her separation on April 21, 2023;
   c. Plaintiff SHOTWELL is owed $3,750.00 in fraudulent escrow deductions and $1,956.96 in unauthorized "Towing" charges, which Defendants failed to pay upon his separation on July 30, 2023;
   d. Plaintiff SMITH is owed $1,050.00 in unreimbursed fraudulent escrow deductions (after partial repayment) and $1,550.00 in unauthorized deductions for "Ramp Missing" and "Truck deep cleaning", which Defendants failed to pay upon his separation on June 30, 2023;
   e. Plaintiff STINSON is owed $800.00 in fraudulent escrow deductions and $4,227.00 in unpaid wages for completed loads, sign-on incentive, and referral incentive, which Defendants failed to pay upon his separation on August 28, 2021; and
   f. Plaintiff VANTASSELL is owed $675.00 in unreimbursed fraudulent escrow deductions (after partial repayment), which Defendants failed to pay upon his separation on January 1, 2023. These amounts represent known deductions and unpaid wages that Defendants unlawfully withheld as final compensation, with the possibility of additional, currently unknown amounts.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in their favor, and against Defendants ALINA NASTAS a/k/a ALINA SALARI and IVAN SALARI a/k/a NICHOLAS SALARI and GLIDE LOGISTICS, INC., jointly and severally, for each Plaintiff, as follows:

A. Monetary award for unpaid final compensation, including fraudulent "escrow" deductions and other unauthorized deductions, as well as any and all unpaid earned final compensation to each Plaintiff respectively, as follows:
    i. Plaintiff AKERS in the amount of $2,153.10, comprising $1,750.00 in fraudulent escrow deductions and $403.10 in other unauthorized deductions;
    ii. Plaintiff BREWER in the amount of $1,450.00, comprising $1,250.00 in fraudulent escrow deductions and $200.00 in unauthorized "Deep Cleaning" deductions;
    iii. Plaintiff SHOTWELL in the amount of $5,706.96, comprising $3,750.00 in fraudulent escrow deductions and $1,956.96 in unauthorized "Towing" charges;
    iv. Plaintiff SMITH in the amount of $2,600.00, comprising $1,050.00 in unreimbursed fraudulent escrow deductions and $1,550.00 in unauthorized deductions for "Ramp Missing" and "Truck deep cleaning";
    v. Plaintiff STINSON in the amount of $5,027.00, comprising $800.00 in fraudulent escrow deductions and $4,227.00 in unpaid wages for completed loads, sign-on incentive, and referral incentive;
    vi. Plaintiff VANTASSELL in the amount of $675.00 in unreimbursed fraudulent escrow deductions;
B. Award of pre-judgment interest on all amounts at 5% per month beginning on the date of each Plaintiff's separation from employment;
C. Award of Reasonable Attorney's Fees and Costs;
D. Whatever other relief the Court deems just and reasonable.

### COUNT V
### ILLINOIS COMMON LAW BREACH OF FIDUCIARY DUTY
### All Plaintiffs vs. All Defendants

153.    Plaintiffs incorporate and reallege Paragraphs 1-123 of this Complaint herein this Paragraph of this Count.

154.    Defendants assumed a fiduciary duty to each Plaintiff with respect to each Plaintiff's respective wages deducted on the pretense of an "escrow". The minimum fiduciary obligations assumed by Defendants by accepting "escrow" funds included:

   a. Segregation of the Plaintiffs' escrow funds and notice to Plaintiffs' where the escrow funds are deposited;

   b. Notice to Plaintiffs' of the specific items to which the escrow fund can be applied and ensuring any charges against the escrow funds adhere to these permissible categories of charges;

   c. Prior notice to each Plaintiff of any anticipated charge against the funds held in escrow with an opportunity of each Plaintiff to contest the escrow;

   d. Provision of an accounting to each Plaintiff of any transactions involving their escrow funds, including documentation of any charges against the escrow funds;

   e. That while the escrow funds were under the control of the Defendants, payment of reasonable interest to Plaintiffs on the funds deposited in "escrow".

   f. Prompt return of all funds held in escrow;

155.    Defendants intentionally and in bad-faith breached this fiduciary duty owed to each Plaintiff, namely by:

   a. Failing to segregate the Plaintiffs' escrow funds and never notifying Plaintiffs where the escrow funds were deposited;

   b. Failing to provide notice to Plaintiffs of the specific items to which the escrow fund could be applied and making unauthorized charges against the escrow funds;

   c. Failing to provide prior notice to each Plaintiff of any anticipated charge against the funds held in escrow and denying each Plaintiff the opportunity to contest the charges;

   d. Failing to provide an accounting to each Plaintiff of any transactions involving their escrow funds, including documentation of any charges against the escrow funds;

   e. Failing to pay Plaintiffs any interest on the funds deposited in "escrow" while under the control of the Defendants;

f.  Failing to promptly return all funds held in escrow upon request or termination of employment;

g.  Never establishing a genuine "escrow" account for said monies;

h.  Converting the "escrow" monies for use by the RICO Enterprise rather than for the benefit of Plaintiffs;

i.  Failing to provide accurate accounting of the use or location of the escrow monies to Plaintiffs.

156.    As a direct and proximate result of the breach of fiduciary duty committed by Defendants, each Plaintiff has been injured in their business and property in that they were denied access to their wages deducted for fraudulent "escrow" while in possession of Defendants and each Plaintiff has been denied interest payments on their wages deducted for the fraudulent "escrow" as follows:

a.  Plaintiff AKERS: (i) Total escrow deductions: $1,750.00 (ii) Damages: Loss of use of $1,750.00, failure to receive interest on the escrowed funds, and failure to receive a timely return of the escrow upon separation from employment on July 1, 2023.

b.  Plaintiff BREWER: (i) Total escrow deductions: $1,250.00 (ii) Damages: Loss of use of $1,250.00, failure to receive interest on the escrowed funds, and failure to receive a timely return of the escrow upon separation from employment on April 21, 2023.

c.  Plaintiff SHOTWELL:(i) Total escrow deductions: $3,750.00 (ii) Damages: Loss of use of $3,750.00, failure to receive interest on the escrowed funds, and failure to receive a timely return of the escrow upon separation from employment on July 30, 2023.

d.  Plaintiff SMITH: (i) Total escrow deductions: $2,000.00 (ii) Amount repaid: $950.00 (iii) Outstanding escrow amount: $1,050.00 (iv) Damages: Loss of use of $2,000.00 for the period it was held, failure to receive interest on the escrowed funds, failure to receive a timely return of the full escrow upon separation from employment on June 30, 2023, and improper deductions against the escrow for "dog hair" cleaning ($300.00) and "ramps" ($1,250.00) without proper notice or consent.

e.  Plaintiff STINSON: (i) Total escrow deductions: $800.00 (ii) Damages: Loss of use of $800.00, failure to receive interest on the escrowed funds, and failure to receive a timely return of the escrow upon separation from employment on August 28, 2021.

f.  Plaintiff VANTASSELL: (i) Total escrow deductions: $2,500.00 (ii) Amount repaid: $1,825.00 ($1,000.00 on March 8, 2023, and $825.00 on July 3, 2023) (iii)

Outstanding escrow amount: $675.00(iv) Damages: Loss of use of $2,500.00 for the period it was held, failure to receive interest on the escrowed funds, failure to receive a timely return of the full escrow upon separation from employment on January 1, 2023, and delayed partial repayments made only after legal action was initiated.

157.    Defendants' actions were willful and intentional and for their personal benefit, meriting the imposition of punitive damages.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in their favor, and against Defendants GLIDE LOGISTICS, INC., ALINA NASTAS a/k/a ALINA SALARI, and IVAN SALARI a/k/a NICHOLAS SALARI, jointly and severally, for each Plaintiff as follows:

A. Award of damages for fraudulently converted escrow deductions:
   i. Plaintiff AKERS: $1,750.00;
   ii. Plaintiff BREWER: $1,250.00;
   iii. Plaintiff SHOTWELL: $3,750.00;
   iv. Plaintiff SMITH: $1,050.00 (unreimbursed amount from total $2,000.00 deducted);
   v. Plaintiff STINSON: $800.00;
   vi. Plaintiff VANTASSELL: $675.00 (unreimbursed amount from total $2,500.00 deducted);
B. Award of prejudgment interest on the full amount of escrow deductions for each Plaintiff at the highest rate available under law, calculated from the date of each deduction until the date of judgment;
C. Award of punitive damages in an amount to be determined at trial, given the willful and wanton nature of Defendants' breach of their fiduciary duties;
D. Award of costs incurred in bringing this action;
E. Such other and further relief as this Court deems just and proper under the circumstances, including any additional damages that may be established at trial.

### COUNT VI
### ILLINOIS COMMON LAW FRAUD
### All Plaintiffs vs. All Defendants

158.    Plaintiffs incorporate and reallege Paragraphs 1-113 of this Complaint herein this Paragraph of this Count.

159.    At all times material to this Complaint, Defendants Nick and Alina acted within the scope of their agency for Defendant GLIDE, and on behalf of Defendant GLIDE.

160.    Defendants Nick and Alina agreed to and did conduct and participate in the conduct of the Defendant GLIDE's affairs through a pattern of activity constituting fraud in Illinois and for the unlawful purpose of defrauding Plaintiffs out of their wages through deductions for fraudulent "escrow" accounts.

161.    Specifically, the facts of the fraud committed by Defendants as against each Plaintiff, are set forth in the following respective Paragraphs of this Complaint:

   a.  Plaintiff AKERS: Complaint ¶62-73; and ¶74-77;
   b.  Plaintiff BREWER: Complaint ¶62-73; and ¶79-82;
   c.  Plaintiff SHOTWELL: Complaint ¶62-73; and ¶84-87;
   d.  Plaintiff SMITH: Complaint ¶62-73; and ¶90-93;
   e.  Plaintiff STINSON: Complaint ¶62-73; and ¶96-99; and
   f.  Plaintiff VANTASSELL: Complaint ¶62-73; and ¶102-105.

162.    Each Plaintiff reasonably relied on these fraudulent material misrepresentations regarding their escrows and each Plaintiff relied to their detriment on these fraudulent misrepresentations to their detriment by not immediately objecting to the deductions and by not cease driving for Defendants.

163.    As a direct and proximate result of Defendant Alina's and Defendant Nick's fraud, each Plaintiff has been injured in their business and property in that they were denied access to their earned wages deducted on the fraudulent pretext of an "escrow" while in possession of Defendants Nick and Alina and each Plaintiff has been denied interest payments on their wages deducted for the fraudulent "escrow" in at least the following amounts:

   a.  Plaintiff AKERS sustained damages in the amount of $1,750.00 plus unpaid interest on said amounts;
   b.  Plaintiff BREWER sustained damages in the amount of $1,250.00 plus unpaid interest on said amounts;

    c.   Plaintiff SHOTWELL sustained damages in the amount of $3,750.00 plus unpaid interest on said amounts;

    d.   Plaintiff SMITH sustained damages in the amount of $1,050.00 plus unpaid interest on the "escrow" deductions totaling $2,000.00;

    e.   Plaintiff STINSON sustained damages in the amount of $800.00 plus unpaid interest on said amounts; and

    f.   Plaintiff VANTASSELL sustained damages in the amount of $675.00 plus unpaid interest on "escrow" deductions totaling $2,500.00.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in their favor, and against Defendants ALINA NASTAS a/k/a ALINA SALARI and IVAN SALARI a/k/a NICHOLAS SALARI, jointly and severally, for each Plaintiff as follows:

A.  Award of actual damages as follows:

    i.   Plaintiff AKERS in the amount of $1,750.00, plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the deduction date;

    ii.   Plaintiff BREWER in the amount of $1,250.00, plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the deduction date;

    iii.   Plaintiff SHOTWELL in the amount of $3,750.00 plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the respective deduction date;

    iv.   Plaintiff SMITH in the amount of $1,050.00 plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the respective deduction date;

    v.   Plaintiff STINSON in the amount of $800.00 plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the respective deduction date; and

    vi.   Plaintiff VANTASSELL in the amount of $675.00 plus prejudgment interest on each respective deduction of wages for the fraudulent escrow at the highest rate available under law beginning on the respective deduction date;

F.  Award of punitive damages to each Plaintiff in an amount necessary to punish Defendants and deter future misconduct; and

G.  Whatever other relief the Court deems just and reasonable.

## COUNT VII
### ILLINOIS COMMON LAW CONVERSION
### All Plaintiffs vs. All Defendants

164.    Plaintiffs incorporate and reallege Paragraphs 1-113 of this Complaint herein this Paragraph of this Count.

165.    Defendants Nick and Alina agreed to and did conduct and participate in the conduct of the Defendant GLIDE's affairs through a pattern of activity constituting the tort if conversion in Illinois and for the unlawful purpose of converting Plaintiffs out of their wages.

166.    Defendants have unlawfully converted the following wages belonging to Plaintiffs: (i) Plaintiff AKERS's converted wages include $1,750.00 in fraudulent escrow deductions and $403.10 in other unauthorized deductions, totaling $2,153.10; (ii) Plaintiff BREWER's converted wages include $1,250.00 in fraudulent escrow deductions and $200.00 in unauthorized "Deep Cleaning" deductions, totaling $1,450.00; (iii) Plaintiff SHOTWELL's converted wages include $3,750.00 in fraudulent escrow deductions and $1,956.96 in unauthorized "Towing" charges, totaling $5,706.96; (iv) Plaintiff SMITH's converted wages include $1,050.00 in unreimbursed fraudulent escrow deductions (after partial repayment) and $1,550.00 in unauthorized deductions for "Ramp Missing" and "Truck deep cleaning", totaling $2,600.00; (v) Plaintiff STINSON's converted wages include $800.00 in fraudulent escrow deductions and $4,227.00 in unpaid wages for completed loads, sign-on incentive, and referral incentive, totaling $5,027.00; and (vi) Plaintiff VANTASSELL's converted wages include $675.00 in unreimbursed fraudulent escrow deductions (after partial repayment). These amounts represent known wages that Defendants have unlawfully retained and converted to their own use, depriving Plaintiffs of their rightful property. The full extent of converted wages may be subject to further discovery, as there is a possibility of additional, currently unknown amounts that have been similarly converted by Defendants.

167.    Each Plaintiff had and has an unconditional right to possession to their respective wages wrongfully converted as noted in the Paragraph 166 above.

168.    Defendant's exclusive and wrongful possession of each Plaintiff's respective wages as detailed in Paragraph 166 has completely denied each Plaintiff's possession of their wages.

169.    Each Plaintiff has demanded repayment from Defendants of their respective wages and escrows detailed in Paragraph 166 in writing.

170.    Defendants' have refused to return the Plaintiffs' aforesaid property, constituting the tort of conversion.

171.    The Defendants' conversion of Plaintiffs' property is and was willful and intentional, meriting imposition of punitive damages.

172.    As a direct and proximate result of the conversion committed by Defendants, each Plaintiff has suffered damages in the respective amounts detailed in Paragraph 166 above.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in their favor, and against Defendants GLIDE LOGISTICS, INC., ALINA NASTAS a/k/a ALINA SALARI, and IVAN SALARI a/k/a NICHOLAS SALARI, jointly and severally, for each Plaintiff as follows:

A.  Award of damages for unlawfully converted wages:

    i.   Plaintiff AKERS: $2,153.10, comprising $1,750.00 in fraudulent escrow deductions and $403.10 in other unauthorized deductions;

    ii.  Plaintiff BREWER: $1,450.00, comprising $1,250.00 in fraudulent escrow deductions and $200.00 in unauthorized "Deep Cleaning" deductions;

    iii. Plaintiff SHOTWELL: $5,706.96, comprising $3,750.00 in fraudulent escrow deductions and $1,956.96 in unauthorized "Towing" charges;

    iv.  Plaintiff SMITH: $2,600.00, comprising $1,050.00 in unreimbursed fraudulent escrow deductions and $1,550.00 in unauthorized deductions for "Ramp Missing" and "Truck deep cleaning";

    v.   Plaintiff STINSON: $5,027.00, comprising $800.00 in fraudulent escrow deductions and $4,227.00 in unpaid wages for completed loads, sign-on incentive, and referral incentive;

    vi.  (vi) Plaintiff VANTASSELL: $675.00 in unreimbursed fraudulent escrow deductions;

B.  Award of prejudgment interest on the full amount of converted wages for each Plaintiff at the highest rate available under law, calculated from the date of each conversion until the date of judgment;

C.  Award of punitive damages in an amount to be determined at trial, given the willful and wanton nature of Defendants' unlawful conversion of Plaintiffs' wages;

D.  Award of costs incurred in bringing this action;

E.  Such other and further relief as this Court deems just and proper under the circumstances, including any additional damages that may be established at trial.

**COUNT VIII**
**RETALIATION IN VIOLATION OF THE SURFACE TRANSPORTATION ACT, 49**
**U.S.C. § 31105, *et seq.***
**Plaintiff STINSON v. All Defendants**

173.    Plaintiff STINSON incorporates and realleges Paragraphs 1-113 of this Complaint herein this Paragraph of this Count.

174.    From Plaintiff STINSON's date of hire in April 2021 through August 28, 2021, Plaintiff STINSON was an employee of Defendants within the definition of the STAA, 49 U.S.C. § 31105(2).

175.    From Plaintiff STINSON's date of hire in April 2021 through August 28, 2021, Defendant GLIDE LOGISTICS, INC., was an employer of Plaintiff STINSON within the definition of the STAA, 49 U.S.C. § 31105(3).

176.    From Plaintiff STINSON's date of hire in April 2021 through August 28, 2021, Defendant ALINA NASTAS a/k/a ALINA SALARI was an individual engaged in interstate trucking and at all relevant times to this Complaint was an employer of Plaintiff STINSON within the definition of the STAA, 49 U.S.C. § 31105(3).

177.    From Plaintiff STINSON's date of hire in April 2021 through August 28, 2021, Defendant IVAN SALARI a/k/a NICHOLAS SALARI was an individual engaged in interstate trucking and at all relevant times to this Complaint was an employer of Plaintiff STINSON within the definition of the STAA, 49 U.S.C. § 31105(3).

178.    At all times relevant to this Complaint, Defendants were either joint employers of Plaintiff STINSON as each separately had the authority to exercise control over Plaintiff STINSON as an over the road driver.  In the alternative, Defendants operated an integrated

trucking enterprise, as the Defendants' operations were interrelated with shared equipment, truck yards, dispatch, ELD logs, vehicle maintenance facilities, driver recruitment and training and shared staff, and as Defendants shared common management, ownership and control of labor relations through the Individual Defendants.

179.    In April 2021, Plaintiff STINSON began driving commercial motor vehicles within the meaning of the STAA, 49 U.S.C. § 31105(1) for the Defendants.

180.    Beginning in May 2021, Plaintiff STINSON routinely had problems with the ELD system provided by the Entity Defendants, and repeatedly complained have it fixed, including in May 2021, June 2021, and August 2021.

181.    Beginning in May 2021, Plaintiff STINSON repeated had safety issues with the equipment provided by the Entity Defendants and repeatedly complained to have it timely fixed. This included a trailer light failure in May 2021, inappropriate or no tarps for loads provided, and bad tires on an assigned trailer in July and around August 14, 2021.

182.    Beginning in May 2021, Plaintiff STINSON had incorrect permits for loads he was procured by the Defendants and repeatedly complained to have the permits corrected.

183.    Due to these continuing safety issues, Plaintiff STINSON repeatedly asked for new equipment from Defendants and was repeatedly promised he would be assigned new equipment from Defendants, but Defendants never supplied new equipment.

184.    On or about August 13, 2021, Plaintiff STINSON noticed deterioration in the tires and requested replacement from Defendant Nick.

185.    On or about August 27, 2021, Plaintiff STINSON discovered significant tire damage on two trailer tires on a route from Pennsylvania to Nebraska and requested repairs from Defendant Alina.

186.    Plaintiff STINSON sent the following pictures of the tire damage to Defendant Alina:



187.    On or about August 27, 2021, Plaintiff STINSON was directed by Defendant Alina to come to the Defendants truck yard in Chicagoland, Illinois, to have the tires repaired.

188.    On or about August 28, 2021, Plaintiff STINSON came to the assigned truck yard and was told by an agent of the Defendants that the tires could not be repaired.

189.    Plaintiff STINSON was then instructed by Defendant Nick to leave Chicagoland, Illinois, continue driving the load to Nebraska on the unsafe tires and get them repaired on the way.

190.    Plaintiff STINSON had a reasonable apprehension of serious injury to himself and the public because of the hazardous condition of the tires if he were to continue driving to Nebraska.

191.    On August 28, 2021, Plaintiff STINSON refused to continue driving the unsafe tires, and was constructively discharged due to his refusal to continue driving the load on unsafe trailer tires.

192.     At all times relevant to this Complaint, Plaintiff STINSON was qualified to drive for Defendants and met the legitimate employment expectations of Defendants.

193.    Following Plaintiff STINSON's constructive discharge, Defendants retaliated against Plaintiff STINSON for his safety complaints and refusal to drive an unsafe trailer further by withholding the following payments to Plaintiff STINSON:

   a.  Estimated Payment of $1,080.00 for load from Pennsylvania to Nebraska prior to constructive discharge, to be paid at 27% of the fee charged by Defendants less permitting costs, estimated to be $4,000.00;

   b.  Estimated Payment of $297.00 for load from New York to Ohio in August 2021, to be paid at 27% of the fee charged by Defendants less permitting costs, estimated to be $1,100.00;

   c.  Estimated Payment of $1,350.00 for load Texas to New York in August 2021, to be paid at 27% of the fee charged by Defendants less permitting costs, estimated to be $5,000.00;

   d.  Payment of $1,000.00 sign on incentive promised to Plaintiff STINSON by Defendants; and

   e.  Payment of $500.00 for referral incentive promised to Plaintiff STINSON by Defendants for the referral of Plaintiff Brewer;

   f.  Disbursal of $800.00 of deductions purportedly deducted for purposes of "escrow" collected;

194.    As a result of his constructive discharge, Plaintiff STINSON has lost income and suffered emotional distress, loss of reputation and has incurred attorney's fees and costs in this matter.

195.    Under the Surface Transportation Assistance Act ('STAA"), it is unlawful for an employer to take an adverse employment action against an employee because the employee

engaged in protected activity. 49 U.S.C. § 31105, *et seq.* The provisions of the STAA relevant to this charge state:

> (1) A person may not discharge an employee, or discipline or discriminate against an employee regarding pay, terms, or privileges of employment, because-
>
>> (B) the employee refuses to operate a vehicle because-
>>
>>> (i) the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety or health;

49 U.S.C. § 31105(a)(1)(B)(i).

196.     The regulations implementing the STAA state: "It is a violation for any employer to intimidate, threaten, restrain, coerce, blacklist, discharge, discipline, or in any other manner retaliate against an employee because the employee" engaged in protected activity. 29 C.F.R. § 1978.102(a).

197.     The United States of America, through the Federal Motor Carrier Safety Administration, has promulgated safety regulations relating to tires used on commercial trailers, including the trailer Complainant Simpson was assigned to recover by Defendants.  49 C.F.R. § 393.75, *et seq*.

198.     Employees are protected from retaliatory action by their employer for refusal to operate a commercial vehicle if operating the vehicle would result in the violation of safety and health regulations promulgated by the United States of America, under § 31105(a)(1)(B)(i) of the STAA and its regulations at 29 C.F.R. § 1978.102(c)(1)(i).

199.     As alleged herein, on August 27-28, 2021, Plaintiff STINSON refused to violate 49 C.F.R. § 393.75 and continue driving on destroyed trailer tires to Nebraska.  Plaintiff STINSON's refusal to drive this unsafe assignment on August 28, 2021, would have led to his termination if he did not quit and therefore constituted a constructive discharge by Defendants.

200.    By constructively discharging Plaintiff STINSON and by withholding $ $5,027.00 from his final compensation in retaliation for this refusal, Defendants violated § 31105(a)(1)(B)(i) of the STAA and its regulations at 29 C.F.R. § 1978.102(c)(1)(i).

201.    As a result of this unlawful retaliation, Plaintiff STINSON has lost income and suffered emotional distress, loss of reputation and has incurred attorney's fees and costs in this matter.

202.    Under the Surface Transportation Assistance Act ('STAA"), it is unlawful for an employer to take an adverse employment action against an employee because the employee engaged in protected activity. 49 U.S.C. § 31105, *et seq.* The provisions of the STAA relevant to this charge state:

> (1) A person may not discharge an employee, or discipline or discriminate against an employee regarding pay, terms, or privileges of employment, because-
>
> > (B) the employee refuses to operate a vehicle because-
> >
> > > (ii)    the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's hazardous safety or security condition;

49 U.S.C. § 31105(a)(1)(B)(ii).

203.    The regulations implementing the STAA state: "It is a violation for any employer to intimidate, threaten, restrain, coerce, blacklist, discharge, discipline, or in any other manner retaliate against an employee because the employee" engaged in protected activity. 29 C.F.R. § 1978.102(a).

204.    As alleged herein, on August 28, 2021, Plaintiff STINSON had a reasonable apprehension of serious injury to himself and the public if he were to continue to drive to Nebraska on the destroyed trailer tires.  Prior to his refusal, Plaintiff STINSON specifically attempted to have the destroyed tires repaired in Chicago and Plaintiff STINSON was unable to obtain

correction of the hazard from the Defendants. Plaintiff STINSON's refusal to drive this unsafe assignment on August 28, 2021, would have led to his termination if he did not quit and therefore constituted a constructive discharge by Defendants.

205. By constructively discharging Plaintiff STINSON and by withholding $ $5,027.00 from his final compensation in retaliation for this refusal, Defendants violated § 31105(a)(1)(B)(ii) of the STAA and its regulations at 29 C.F.R. § 1978.102(c)(1)(ii).

206. As a result of this unlawful retaliation, Plaintiff STINSON has lost income and suffered emotional distress, loss of reputation and has incurred attorney's fees and costs in this matter.

207. Under the Surface Transportation Assistance Act ('STAA"), it is unlawful for an employer to take an adverse employment action against an employee because the employee engaged in protected activity. 49 U.S.C. § 31105, *et seq.* The provisions of the STAA relevant to this charge state:

> (1) A person may not discharge an employee, or discipline or discriminate against an employee regarding pay, terms, or privileges of employment, because-
>
> > (A)(i) the employee, or another person at the employee's request, has filed a complaint or begun a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order, or has testified or will testify in such a proceeding49 U.S.C. § 31105(a)(1)(A)(i).

208. The regulations implementing the STAA state: It is a violation for any person to intimidate, threaten, restrain, coerce, blacklist, discharge, discipline, harass, suspend, demote, or in any other manner retaliate against any employee because the employer perceives that: (1) The employee has filed orally or in writing or is about to file orally or in writing a complaint with an employer, government agency, or others or has begun or is about to begin a proceeding related to

a violation of a commercial motor vehicle safety or security regulation, standard or order." 29 C.F.R. § 1978.102(e)(1).

209. Between May 2021 through August 2021, Plaintiff STINSON made at least 10 complaints to Defendants as recited herein, regarding violations of commercial motor vehicle standards, including malfunctioning ELD equipment, damages tires, a failing trailer light, lack of appropriate tarps and lack of appropriate permits, constituting protected activity under 29 C.F.R. § 1978.102(e)(1).

210. By constructively discharging Plaintiff STINSON on August 28, 2021, and withholding $5,027.00 from his final compensation in retaliation for these protected complaints, Defendants violated § 31105(a)(1)(a)(i) of the STAA and its regulations at 29 C.F.R. § 1978.102(e)(1).

211. As a result of this unlawful retaliation, Plaintiff STINSON has lost income and suffered emotional distress, loss of reputation and has incurred attorney's fees and costs in this matter.

212. The Defendants' actions were malicious and willful, meriting the imposition of punitive damages.

WHEREFORE, the PLAINTIFF JAMES STINSON, requests that this Court enter an order jointly and severally against GLIDE LOGISTICS, INC., ALINA NASTAS a/k/a ALINA SALARI, IVAN SALARI a/k/a NICHOLAS SALARI, granting Plaintiff STINSON:

A. All available damages for lost income, lost benefits, and other compensation, plus pre-judgment interest at the statutory rate;

B. Compensatory damages;

C. All necessary injunctive relief, including front pay;

D.  Reasonable attorney's fees and costs incurred in this litigation;

E.  Punitive Damages necessary to address Defendants' egregious disregard for Federal and State regulations, as well as the safety of those traveling on our country's highways; and

F.  All such further relief as shall meet equity and good conscience and permitted by law.

**COUNTS TO BE INTERPRETED AS PLED IN THE ALTERNATIVE AS PERMISSIBLE BY THE FEDERAL RULES OF CIVIL PROCEDURE.**

**JURY TRIAL DEMANDED FOR ALL PERMISSIBLE COUNTS.**

Respectfully submitted,

By:   /s/  Nicholas Kreitman___
      Nicholas Kreitman
      One of the Plaintiffs' Attorneys

Nicholas Kreitman
Kreitman Law, LLC
505 North La Salle Drive
Suite 500
Chicago, IL 60654
Attorney ID # 6313283
(847) 970-0575
njk@kreitmanlaw.com