## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JAMES STINTON, et al.,

Plaintiffs,

v.

ALINA NASTAS, et al.,

Defendants.

Case No. 24-cv-07893

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Rodney Akers, II ("Akers"), Karla Brewer ("Brewer"), James Shotwell ("Shotwell"), Lavern Smith ("Smith"), James Stinson ("Stinson"), and Allen Vantassell ("Vantassell") (collectively, "Plaintiffs") bring this action against Alina Nastas and Ivan Salari ("Defendants") alleging, among other things, that Defendants improperly converted their wages under a false pretext of an "escrow" fund. Plaintiffs' eight-count Complaint sets out federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, the Truth-in-Leasing Act ("TILA"), 49 U.S.C., § 14704, *et seq.*, and the Surface Transportation Assistance Act ("STAA"), 49 U.S.C. § 31105, *et seq.*, as well as state law claims for breach of fiduciary duty, fraud, conversion, and violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115, *et seq.* Defendants move to dismiss [28] Plaintiffs' counts for RICO, breach of fiduciary duty, fraud, and conversion.

For the reasons stated herein, the motion to dismiss [28] is granted-in-part.

## I.    Background

1

The following factual allegations taken from the operative complaint [1] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Glide Logistics, Inc. ("Glide Logistics") was a transportation company that employed truck drivers to transport its customers' freight. [1] ¶ 5. Glide Logistics is now defunct. *Id.* ¶ 61(f). Plaintiffs are truck drivers who worked for Glide Logistics for various lengths of time between approximately May 2021 and July 2023. *Id.* ¶¶ 8, 11, 14, 16, 18, 24. Defendants were the owners of Glide Logistics. *Id.* ¶ 55.

Between approximately July 2021 and July 2023, Defendants engaged in a scheme that involved emailing each Plaintiff a weekly pay statement that contained wage deductions for a purported "escrow" fund. *Id.* ¶¶ 56, 62–63, 75, 80, 85, 91, 97, 103. According to Plaintiffs, Defendants knew at the time each email was sent that Plaintiffs' wages were never going to be held in "escrow." *Id.* ¶ 66. Rather, Defendants were using Plaintiffs' wages in furtherance of their "RICO Enterprise" and for the purpose of expanding a variety of entities that they controlled. *Id.* ¶¶ 1, 61(c); 70, 109. Defendants have yet to return to Plaintiffs the full amount of wages that Defendants deducted under the pretext of an "escrow." *Id.* ¶¶ 74–105.

On August 29, 2024, Plaintiffs filed an eight-count Complaint against Glide Logistics, Alina Nastas, and Ivan Salari. [1]. As to all Plaintiffs, the Complaint alleges violations of RICO under Sections 1962(c) (Count I) and 1962(d) (Count II), the TILA (Count III), the IWPCA (Count IV), as well as breach of fiduciary duty (Count V),

fraud (Count VI), and conversion (Count VII). As to Stinton only, the Complaint alleges retaliation in violation of the STAA (Count VIII).

On April 3, 2025, Plaintiffs filed a Notice of Dismissal as to Glide Logistics only. [19]. This Court dismissed Glide Logistics without prejudice the next day. [20]. On May 5, 2025, Defendants filed a motion to dismiss [28], seeking dismissal of Counts I, II, V, VI, and VII.

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to

be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III.   Analysis

### A.  Counts I & II: Violation of RICO

Plaintiffs claim that Defendants violated Section 1962(c) of RICO (Count I) and engaged in a conspiracy under Section 1962(d) to violate Section 1962(c) of RICO (Count II). RICO provides a civil cause of action for private plaintiffs injured by long-term criminal schemes. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336 (7th Cir. 2019). To state a claim under Section 1962(c) of RICO, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (citation omitted). To plead a "pattern of racketeering activity," a plaintiff must satisfy a standard known as the "continuity plus relationship" test. *Id.* at 337. This test has two prongs: the "predicate acts [must] be related to one another" (the relationship prong) and "pose a threat of continued criminal activity" (the continuity prong). *Amerikal Prods. Corp. v. Cave*, No. 24 C 11292, 2025 WL 1883743, at *5 (N.D. Ill. July 8, 2025) (citing *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir.

1992)). Continuity under RICO can be open-ended or closed-ended. "[A] RICO plaintiff can prevail by either (1) demonstrating a closed-ended conspiracy that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended conspiracy that, while short-lived, shows clear signs of threatening to continue into the future." *Midwest Grinding,* 976 F.2d at 1023. At the motion to dismiss stage, the determinative issue is whether a plaintiff "adequately alleged that the challenged conduct occurred and went on long enough and with enough of a relationship with itself to constitute a pattern." *Menzies*, 943 F.3d at 337.

Defendants argue that the Complaint insufficiently pleads both open-ended and closed-ended continuity[1]. The Court agrees.

### i. Open-Ended Continuity

Open-ended continuity "requires a showing of past conduct that 'by its nature projects into the future with a threat of repetition.'" *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011) (citing *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 241 (1989)). Open-ended continuity does not exist when the alleged scheme has a natural ending point because the plaintiff cannot show a continuing threat of criminal activity. *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty., Ill.,* 424 F.3d 659, 674 (7th Cir.2005).

Here, there is no indication of any "threat of repetition." As proclaimed by Plaintiffs, the goal of Defendants' "RICO Enterprise" was to defraud "truck drivers

---

[1]Defendants also challenge other aspects of Plaintiffs' RICO claims. However, because the Court finds that the continuity prong of the "continuity plus relationship" is insufficiently plead, the Court need not address Defendants' other arguments.

via the fraudulent escrow scheme, with the converted funds being reinvested in various businesses effecting interstate commerce." [31] at 5 (quoting [1] ¶ 111) (cleaned up). However, once Plaintiffs were no longer employed with Defendants, the alleged scheme was complete, as there were no more wages from which Defendants could convert. In other words, the allegedly fraudulent scheme naturally ended when Plaintiffs were no longer employed at Glide Logistics. There is therefore no threat of repeated criminal activity that could support an open-ended theory of continuity.

Plaintiffs nevertheless contend that the scheme was open-ended because "there is no indication the scheme would have ceased but for Plaintiffs' departures." [31] at 2. Yet aside from unparticularized allegations that Defendants' scheme was "on-going and continued for years, effecting … likely every other driver party to a lease agreement with [Glide Logistics]" ([1] ¶ 111), the Complaint contains no indication of any continued threat of wage conversion. Plaintiffs' cursory allegations do not suffice to establish open-ended continuity. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 783 (7th Cir. 1994) ("A threat of continuity cannot be found from bald assertions."); *see also Roger*, 424 F.3d at 674 ("[c]onclusory and unsupported allegations" are insufficient to establish open-ended continuity). Moreover, it is difficult for the Court to see how such allegations can exist given that Glide Logistics—the entity through which the wages were collected—is now "defunct" and in bankruptcy proceedings. [1] ¶ 61(f); [31] at 14–15. *See Menzies*, 943 F.3d at 343 ("With Taylor out of the factual equation it is unclear how Menzies's complaint

supports any inference that the alleged scheme would continue."). The facts as pled in the Complaint cannot support an inference of open-ended continuity.

ii.  Closed-Ended Continuity

Plaintiffs fare no better as to closed-ended continuity. Close-ended continuity depends on "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Vicom,* 20 F.3d at 780 (citing *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986)). These factors are to be applied "with an eye toward achieving a natural and commonsense result, recognizing that Congress was concerned in RICO with long-term criminal conduct." *Id.* (internal quotations and citation omitted). At the pleading stage, the analysis is whether the complaint adequately "alleged enough, quantitatively and qualitatively, to show a qualifying pattern of racketeering activity." *Menzies*, 943 F.3d at 342.

The Court starts with duration as it "is the single most important aspect of the closed-ended continuity analysis." *Vicom*, 20 F.3d at 781. Here, the duration of the racketeering activity—the allegedly fraudulent withholding of Plaintiffs' wages in escrow—occurred between July 2021 and July 2023, a period of twenty-four months,[2] with the majority of predicate acts occurring between June 2022 and July 2023. [38] at 10. While the Seventh Circuit does not employ "a bright-line rule for how long a

---

[2] Though Defendants' reply brief states that the predicate acts for Stinson took place from July 2022 to September 2022, [38] at 10, the Complaint indicates that the acts occurred between July 2021 and August 2021. [1] ¶ 97. Defendants seem to have mistaken the dates for Smith with those for Stinson.

closed period must be to satisfy continuity," it "ha[s] not hesitated to find that closed periods of several months to several years did not qualify as substantial enough to satisfy continuity." *Roger,* 424 F.3d at 673 (internal quotations omitted); *see also Martinek v. Diaz*, No. 11 C 7190, 2012 WL 2953183, at \*10 (N.D. Ill. July 18, 2012) (weighing against closed-ended continuity where the predicate acts spanned "[no] more than a few years" and the "vast majority fell within a relatively short time frame"). While the Court cannot conclude that the twenty-four duration here is insufficient as a matter of law, the short duration at least weights against a finding of closed-ended continuity.

The other factors also weigh against close-ended continuity. The predicate acts alleged are wire fraud. [1] ¶¶ 114–122. These are all the same type of offense, which weighs against closed-end continuity. *Vicom*, 20 F.3d at 781 ("[Vicom] does not allege a 'variety of predicate acts' … the only predicate acts that Vicom offers … are acts of mail and wire fraud."). And although 57 acts[3] are alleged, because the acts are all wire fraud, this is inadequate to be considered a pattern. *Midwest Grinding*, 976 F.2d at 1025 (explaining that the Seventh Circuit has cautioned courts to "not look favorably on many instances of mail and wire fraud to form a pattern.") (citation omitted); *Potbelly Sandwich Works, LLC v. Grason, No.* 19 C 4613, 2020 WL 4748151, at \*4 (N.D. Ill. Aug. 17, 2020) (finding 25 instances of mail and wire fraud insufficient and noting that in *Midwest Grinding*, "hundreds" of instances of fraud were

---

[3]Seven for Akers ([1] ¶ 75); fourteen for Brewer (*id.* ¶ 80); fourteen for Shotwell (*id.* ¶ 85); eight for Smith (*id.* ¶ 91); four for Stinson (*id.* ¶ 97); ten for Vantassell (*id.* ¶ 103).

insufficient). Moreover, the only victims the Complaint identifies with specificity are Plaintiffs and the only scheme identified involving the predicate acts is the escrow scheme. *Roger*, 424 F.3d at 674 (rejecting close-ended continuity where plaintiffs alleged "a single, isolated scheme with a confined set of victims."). Finally, there is only one specifically identified injury: economic losses to Plaintiffs from the escrow scheme. *EQ Fin., Inc. v. Pers. Fin. Co.,* 421 F. Supp. 2d 1138, 1148 (N.D. Ill. 2006) ("[c]ourts view economic injuries based on a single scheme to defraud as non-distinct.") (citing *Vicom*, 20 F.3d at 782). For these reasons, the Complaint's allegations are insufficient to plead closed-ended continuity. *See Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 663 (7th Cir. 1992) (finding multiple acts of mail fraud in furtherance of a single scheme and resulting in non-distinct injuries insufficient to establish a pattern of racketeering activity).

Because the Complaint fails to satisfy open-ended or closed-ended continuity, Plaintiffs have not sufficiently alleged the required "pattern of racketeering activity" element of their RICO Section 1962(c) claim. 18 U.S.C. § 1962(c). Count I must therefore be dismissed. When a RICO Section 1962(c) claim fails, a RICO Section 1962(d) claim premised on the same facts fails as well. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000). Thus, Count II must also be dismissed.

## B. Count V: Breach of Fiduciary Duty

Count V alleges that Defendants breached their fiduciary duties to Plaintiffs through the improper handling of the escrow funds. [1] ¶¶ 153–157. To state a claim

for breach of fiduciary duty under Illinois[4] law, a complaint must "allege that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 (7th Cir. 2015) (quoting *Neade v. Portes*, 193 Ill.2d 433, 250 Ill.Dec. 733, 739 N.E.2d 496, 502 (2000)). A fiduciary relationship can arise either (1) "as a matter of law from the relationship of the parties" or (2) "based on the facts of a particular situation, such as a relationship where confidence and trust is reposed on one side, resulting in dominance and influence on the other side." *Dahlin v. Evangelical Child & Family Agency*, 252 F. Supp. 2d 666, 669 (N.D. Ill. 2002). At the pleading stage, a plaintiff "is required only to provide fact[s] sufficient to show that a fiduciary relationship could plausibly exist." *Williams v. Cenlar FSB*, No. 21-CV-03271, 2024 WL 3694477, at *11 (N.D. Ill. Aug. 7, 2024).

Defendants provide several reasons why Plaintiffs have not adequately alleged a fiduciary duty. They first argue that Plaintiffs' employment relationship cannot create a fiduciary duty. Defendants are correct on this point. *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) ("in Illinois, [an employment] relationship does not give rise to a fiduciary duty."). Defendants also argue that the existence of the escrow fund cannot create a fiduciary duty because no formal escrow relationship was established. This point likewise has merit. In Illinois, escrow agents owe

---

[4]As no party has raised a choice-of-law issue with respect to the Counts V, VI, and VII, the Court applies Illinois law to its analysis. *McCoy v. Iberdrola Renewables*, Inc., 760 F.3d 674, 684 (7th Cir. 2014) ("When no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law.").

fiduciary obligations "both to the party making the deposit and the party for whose benefit it is made." *Fed. Deposit Ins. Corp. v. Chicago Title Ins. Co.*, No. 12-CV-05198, 2019 WL 6497354, at *3 (N.D. Ill. Dec. 3, 2019) (citation omitted). Escrow relationships, however, are only established when the escrow is held by "a stranger or third party"—in other words, the escrow agent. *Merchants Nat. Bank of Aurora v. Frazier,* 329 Ill.App. 191, 67 N.E.2d 611, 616 (Ill. App. Ct. 1946); *see also Avila*, 801 F.3d at 783 ("[t]he function of an escrow agent is to serve as intermediary."). Here, there is no intermediary: the allegedly escrowed funds were held by Defendants. As such, there can be no fiduciary duty based on escrow agent status as a matter of law.

This resolves only part of the fiduciary duty puzzle. "Where a fiduciary relationship does not exist as a matter of law, a plaintiff must plead facts from which a fiduciary relationship arises." *Life After Hate, Inc. v. Free Radicals Project, Inc.*, No. 18 C 6967, 2019 WL 2644237, at *9 (N.D. Ill. June 27, 2019) (citation omitted). "A fiduciary duty may arise 'on an ad hoc basis' where an individual or entity solicits another to trust him in matters in which he represents himself to be expert as well as trustworthy and the other is not expert and accepts the offer and reposes complete trust in him." *Jones v. Countrywide Home Loans, Inc.*, No. 09C4313, 2010 WL 551418, at *5 (N.D. Ill. Feb. 11, 2010) (citing *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992)). The Complaint alleges that Defendants represented to Plaintiffs that they would be deducting Plaintiffs' wages[5] for placement into a secure "escrow" fund. [1]

---

[5]There appears to be some confusion regarding the impact of the Equipment Lease Agreement ([2-1]) on Defendants' fiduciary duties. Though the Equipment Lease Agreement contemplates an escrow fund, Plaintiffs allege the agreement does not

¶¶ 1, 80, 85, 91, 97, 103. Given that Defendants were Plaintiffs' employers and superiors, it can reasonably be inferred that Plaintiffs trusted Defendants to manage the escrow fund in a responsible manner. *Sols. Team, Inc. v. Oak St. Health, MSO, LLC,* No. 17-CV-1879, 2018 WL 11432145, at *14 (N.D. Ill. Mar. 5, 2018) ("a fiduciary duty may arise … where one party places trust and confidence in another, thereby placing the latter party in a position of influence and superiority over the former.") (internal quotations and citation omitted).

While the nomenclature "escrow" may be unfitting given the lack of an intermediary, the Complaint still alleges a plausible fiduciary relationship based on Defendants' representations to Plaintiffs that they would be withholding Plaintiffs' wages in a secure, separate account. Defendants, of course, are free to challenge the basis of this fiduciary relationship at a later stage of litigation after further factual development. *See e.g. Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020). But at this stage, Plaintiffs have alleged a plausible claim and Defendants' motion to dismiss must therefore be denied with respect to Count V.

### C. Count VI: Fraud

Count VI alleges that Defendants defrauded Plaintiffs out of their wages through improper escrow deductions. [1] ¶¶ 158–163. Defendants seek dismissal on two

---

authorize specific wage deductions as part of that fund. [1] ¶ 35. As Plaintiffs' claims relate to wages, the alleged duty appears to be extracontractual. This is permissible under Illinois law. *See e.g.*, *Cenlar*, 2024 WL 3694477, at *10 ("fiduciary duties separate from the parties' contractual duties can and do arise even when the parties are bound to a contract."). Importantly, this is applicable to only to Akers, as he is the only plaintiff who signed that agreement.

grounds. They first assert that Plaintiffs' fraud count is impermissibly duplicative of Plaintiffs' IWPCA claim (Count IV). Defendants further argue that Plaintiffs have failed to allege sufficient facts to establish an alter ego theory of liability for Count VI. The Court addresses each point in turn.

### i. Duplicativeness of Count VI

Relying on *Tsybikov v. Dovgal,* No. 19 C 3334, 2019 WL 5208869 (N.D. Ill. Oct. 16, 2019) and *Bruger v. Olero, Inc.*, 434 F. Supp. 3d 647 (N.D. Ill. 2020), Defendants contend that Count VI cannot proceed because, under Illinois law, "a party may not recover in tort what is essentially a breach of contract." [28] at 12. *Tsybikov* and *Bruger*, however, are quite different than the situation here. As Plaintiffs correctly point out, there was no specific allegation of deceptive conduct in *Tsybikov*. 2019 WL 5208869, at *3 ("There was nothing deceptive about it. It was a wrongful act, but it was not fraud."). The same appears true for *Bruger*. 434 F. Supp. at 657. By comparison, Plaintiffs' Complaint makes particularized allegations that Defendants knowingly made false representations regarding the existence of an escrow account when in fact no such escrow existed. *See e.g.*, [1] ¶¶ 62–73. Aside from these factual distinctions, *Tsybikov* and *Bruger* both rely on a passage from *Johnson v. George J. Ball, Inc.*, 248 Ill App. 3d 859, 187 Ill.Dec. 634, 617 N.E.2d 1355 (1993) for their propositions that in Illinois a party cannot recover in tort for a claim that sounds in contract. That passage from *Johnson* is simply a rephrasing of the "economic loss doctrine," known in Illinois as the *Moorman* doctrine. *BP Amoco Chem. v. Flint Hills Res., LLC*, 489 F. Supp. 2d 853, 858 (N.D. Ill. 2007) (identifying *Johnson* as relating

to the *Moorman* doctrine). The *Moorman* doctrine states that "if [a] plaintiff's damages are purely economic in nature, it cannot maintain a claim in tort based on breach of contract facts." *Id*. at 857. But the *Moorman* doctrine has several exceptions, chief among them claims for fraud. *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011) ("Illinois recognizes three general exceptions to the [*Moorman*] doctrine … [including] 'where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.,* fraud.'") (quoting *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 218 Ill.2d 326, 300 Ill.Dec. 69, 843 N.E.2d 327, 333–34 (2006)); *BP Amoco*, 489 F. Supp. 2d at 857–858 (noting the same). Accordingly, the Court finds that *Tsybikov* and *Bruger* do not bar Plaintiffs' fraud claim.[6]

### ii. Alter Ego

Defendants also assert that the Complaint insufficiently alleges an alter ego theory of liability for Count VI. As the Court understands it, the argument goes that because the alleged fraud was conducted in the context of Plaintiffs' employment

---

[6]The Court notes that fraud claims must be pled with particularity under Rule 9(b). *United States v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 739 (7th Cir. 2021). While Defendants moved to dismiss Counts I and II on Rule 9(b) grounds, they did not specifically do the same for Count VII. Defendants' general assertions that "[t]he Complaint fails to plead fraud with the requisite specificity," [1] at 3, and "Plaintiffs also have failed to state a claim for common law fraud," *id*. at 11, do not suffice. *S.E.C. v. Black*, No. 04 C 7377, 2005 WL 1498893, at *4 (N.D. Ill. June 17, 2005) ("A defendant must support a motion to dismiss with adequate argument, identifying the particular deficiency in the complaint. A defendant cannot simply assert that a complaint in its entirety fails to allege a claim with adequate specificity."). The Court is under no obligation to address these undeveloped arguments. *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011).

relationship with Glide Logistics, Defendants cannot be held liable unless Plaintiffs plead sufficient facts to pierce Glide Logistics' corporate veil. Plaintiffs counter by pointing to specific allegations in the Complaint supporting a theory that there was no true separate existence between Glide Logistics and Defendants. Plaintiffs also attach to their response brief transcripts from a bankruptcy proceeding involving Glide Logistics, which Plaintiffs allege support their alter ego claim.

"Corporations and limited liability companies are separate and distinct legal entities from their shareholders and from each other." *In re Udelhoven*, 624 B.R. 629, 642 (Bankr. N.D. Ill. 2021). "However, a court may disregard a corporate entity and pierce the veil of limited liability where the corporation is merely the alter ego or business conduit of another person or entity." *Id.* To pierce the corporate veil under Illinois law, a plaintiff must eventually prove that there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.*" Flentye v. Kathrein*, 485 F. Supp. 2d 903, 912 (N.D. Ill. 2007) (quoting *Sea–Land Servs., Inc. v. Pepper Source*, 993 F.2d 1309, 1311 (7th Cir.1993)). But at the pleading stage, "where a claimant fairly alleges an entity exists as the alter ego of another and provides factual manifestations suggesting the existence that the two operate as a single entity, a motion to dismiss will be denied." *Panitz v. Veristar LLC,* No. 22-CV-5200, 2023 WL 6388232, at *5 (N.D. Ill. Sept. 29, 2023) (quoting *Kellers Sys., Inc. v. Transp. Int'l Pool, Inc.,* 172 F. Supp. 2d 992, 1001 (N.D. Ill. 2001)).

Drawing all reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs have stated a claim sufficient to pierce the corporate veil. The Complaint alleges, among other things, that Defendants owned, managed, and exercised complete dominion and control over Glide Logistics ([1] ¶¶ 55, 139); that Defendants are married and have children together (*id.* ¶ 60(c)); that Glide Logistics' email address automatically loaded Defendant Ivan Salari's name as the individual associated with the account (*id.* ¶ 60(g)); that Plaintiffs received their compensation not through Glide Logistics, but through a different company owned and controlled by Defendants (*id.* ¶ 60(j)(i)); that Plaintiffs operated under a motor carrier authority not of Glide Logistics, but of another business controlled by Defendants (*id.* ¶ 60(j)(ii)); and that Defendant Alina Nastas was a personal guarantor of Glide Logistics' debts (*id.* ¶ 60(j)(vi)). The transcripts[7] from Glide Logistics' bankruptcy proceedings bolster these allegations: Glide Logistics' corporate funds were used to pay at least one of Defendant Alina Nastas' personal expenses ([31-1] at 4) and Glide Logistics failed to ensure timely corporate tax compliance at least in 2023 and 2024 (*id.* at 4–5). Moreover, given Glide Logistics' now defunct status, the Complaint plausibly shows that allowing Defendants to use Glide Logistics to avoid liability here would promote the type of injustice that alter ego liability is intended to prevent. The

---

[7]A court "may take judicial notice of public records, including public court documents, in ruling on a motion to dismiss under Rule 12(b)(6)." *White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016); *Cameron v. Patterson*, No. 11 C 4529, 2012 WL 1204638, at *1 (N.D. Ill. Apr. 10, 2012) ("Courts may take judicial notice of public records, such as complaints, pleadings, and transcripts from another proceeding when deciding a motion to dismiss.").

allegations and transcripts, along with the reasonable inferences taken therefrom, sufficiently allege a plausible alter ego claim.

To be sure, the Court recognizes that a host of factors must eventually be considered when determining if Glide Logistics' corporate form should ultimately be disregarded. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008) (listing factors). A deeper analysis of those factors is for another day. At this stage in the case, Plaintiffs have sufficiently alleged an alter ego relationship.

In sum, the Court finds Defendants' arguments for dismissal of Count VI unpersuasive. Dismissal with respect to Count VI is therefore denied.

### D. Count VII: Conversion

Defendants seek dismissal of Count VII based solely on the same alter ego argument as they made for Count VI. For the reasons explained, Plaintiffs have plausibly alleged an alter ego relationship. Dismissal respect to Count VII is thus denied.

### IV. Conclusion

For the stated reasons, Defendants' motion to dismiss [28] is granted-in-part. Counts I and II are dismissed without prejudice. Counts V, VI, and VII remain standing. The Court will allow Plaintiffs to file an amended complaint if they can cure the deficiencies as discussed in this order.

E N T E R :

Dated: December 3, 2025

_____
MARY M. ROWLAND
United States District Judge